# Wheeling.

## Patton & Shaver *v.* Elk River Navigation Co.

### Decided May 4, 1878.

1. It is a general rule in pleading, that whatever circumstances or facts are necessary to constitute the cause of action or complaint, or the ground of defense, must be directly and distinctly stated in the declaration, or plea, as the case may be; and all beyond is surplusage.

2. Where the count shows the cause of action to be the breach of the contract on the part of the defendant, merely in refusing to pay the plaintiffs for the logs, actually delivered to it by the plaintiffs, per contract, it is not a circumstance necessary to constitute the cause of complaint, whether the defendant had, or had not, title to the land from which the logs were cut, although the contract stated the title was in defendant; and an averment in said count, that defendant had not title, is surplusage; and no proof of title is required.

3. Where the real cause of complaint in a count is a claim for damages, which plaintiffs make for three hundred thousand feet of logs, which the plaintiffs cut for defendant, per contract, on lands, to which defendant claimed the title, but were prevented from delivering in the boom by no act or default of theirs, but by reason of a certain order of injunction, awarded by the circuit court, granted solely on account of the acts and default of the defendant and of the persons owning the stock of defendant, it is not necessary to allege in the count, that the defendant had no title to the lands; nor is it necessary to allege, that "the plaintiffs had purchased a large number of horses, mules and wagons, and employed a large number of laborers, to be used in the delivering of the logs aforesaid;" but such allegations do not *vitiate* the count, and may be rejected as surplusage.

4. If it be true, that plaintiffs did cut the three hundred thousand

1878
Special Term.

| 13 | 259 |
| 34 | 691 |
| 13 | 259 |
| 57 | 72 |
| 13 | 259 |
| f58 | 97 |
| 13 | 259 |
| 63 | 25 |
| f63 | 548 |

1871
Special Term.
Patton & Shaver
v.
Elk River N, Co

feet of logs under their contract, as alleged, and were prevented from delivering the same, by reason of no fault or act of their own, but by reason of the injunction being awarded on account of the acts and default of the defendant, then the plaintiffs are entitled to recover, as damages, the contract price of the logs, so cut and not delivered, less the expense or cost necessary to make the delivery.

b. Upon the trial of the case, the plaintiffs introduced in evidence the resolution, passed by the board of directors of defendant, as evidence of the modified contract, relied on by them to sustain their action; the "defendant objected to said resolution being given in evidence to the jury, upon the ground that it contained only part of the contract between the parties, as it offered to show by its original books, produced in court, and which it offered to prove, which defendant claimed contained the full contract between the parties, and asked the court to require the plaintiffs to give to the jury as part of their evidence, in connection with their resolution," certain other matters from the books of defendant. "But the court being of opinion, that the evidence offered by the plaintiffs, was at this stage of the cause competent to go to the jury by itself, and that the defendant could prove its revision of the contract, when it came to give its evidence to the jury," permitted the plaintiffs to give the resolution in evidence in connection with the proof, that had preceded. HELD:

I. There is no rule of practice, under which the court has power to compel the plaintiffs to introduce any evidence to prove the contract.

II. If the plaintiffs introduce evidence, not admissible by itself, and fail to follow it with other evidence, to make it admissible, it is to their own folly and loss, and not to the injury of defendant; and the court should direct the jury to disregard it.

III. In this case, had the resolution been inadmissible by itself, the defendant could have asked the court to direct the jury to disregard it; but the defendant had no right to ask the court, to compel the plaintiffs, to introduce parts of its entries in its own records, if the plaintiffs did not consider it proper to do so of their own accord.

IV. The defendant's objection is not to the admissibility of the resolution, but to the ruling of the court, in refusing to compel the plaintiffs to introduce other matters in evidence. The court did not err in refusing to give the instructions.

6. When a bill of exceptions does not set out sufficient facts to show the pertinency of the instruction, the Appellate Court will not undertake to decide, whether the court did right, or wrong, in refusing to give the instruction.

7. When an instruction, asked for, is so imperfectly expressed, that its true import is not readily discernible, and would tend to mislead the jury, it should be refused.

8. When in the statement of an instruction asked for, there is such a mixture of *facts* with the *law*, which necessarily would demand the opinion of the court on both, so as to necessitate the court, to either refuse the instruction, or discriminate between the *facts* and *law*, which it is not bound to do, it is not error to refuse the instruction.

A *supersedeas* to a judgment of the circuit court of Kanawha county, rendered on the 17th day of June, 1875, in an action in assumpsit, before said court then pending, in which Patton & Shaver were plaintiffs, and the Elk River Navigation Co. was defendant, granted on the petition of said defendant.

Edward B. Knight, Esq., as special judge, presided at the trial of this case in the court below and rendered the judgment complained of.

The facts of the case sufficiently appear in the opinion of the Court.

*T. B. Swann,* counsel for the plaintiff in error, relied on the following authorities:

1 Chit. Pl. 337 ; *Id.* 395 ; 1 Sm. Lead. Ca. 266 ; Chit. on Cont. pp. 557, 730, 732 and notes, 739, 735, 737-8, 741 ; 5 Pick. 425 ; 9 Pick. 16 ; 7 Mass. 325 ; 13 Mass 94 ; 18 Gratt. 323 ; 17 Gratt. 427 ; 3 Rand. 69 ; 4 Rand. 352 ; Abb. U. S. Dig. 494 §§1814, 1817, 1823 ; *Id.* 502 §§1987-8.

*William A. Quarrier,* counsel for defendant in error, cited the following authorities:

Sedgw. on Dam. (6th ed.) pp. 75, 78 and notes ; Code of W. Va. ch. 131, §13 ; 11 Gratt. 398 ; 6 Cranch 226 ; 1 Wall. 645 ; 2 Wall. 328 ; 2 Sm. Lead. Ca. 40.

1878
Special Term.
Patton & Shaver
v.
Elk River N. Co

MOORE, JUDGE, delivered the opinion of the Court:

This was an action of *assumpsit*. The declaration contained the common counts in the usual form, with specifications filed, and two special counts. The defendants demurred to the declaration, and to each count thereof. It is argued, that the court erred in overruling the demurrer as to the special counts. No error is assigned as to the common counts. The first special count is objected to on the ground, "that the jury was called to pass upon the title to the lands, and also to pass upon the acts of of the stockholders.

The first special count alleges substantially, that on the — day of —, 1871, the plaintiffs made and entered into a contract with the defendant, by which plaintiffs promised and agreed to cut and saw for, and deliver to defendant, a large quantity of lumber; the timber for said lumber, by the terms of said contract, was to be cut from a large tract of land, then and there claimed and represented by the defendant to the plaintiffs to be property of the defendant;" and that in consideration of the said promises and undertakings of the plaintiffs, the defendant, by the terms of said contract, then and there promised and agreed to pay to the plaintiffs for their services in cutting, sawing and delivering said lumber, the sum of $9.00 per thousand feet, mill count, for all lumber so cut, sawed and delivered," &c.; that the plaintiffs, under and by virtue of the contract, entered upon the said land and cut therefrom and delivered to the said defendant, a large quantity of logs, and so continued to do up to and until the 23d day of July, 1872; and that upon the said 23d day of July, 1872, the contract aforesaid was, by mutual consent of the plaintiffs and the defendant, rescinded; and that thereupon, to-wit, on the 23d day of July, 1872, the plaintiffs and defendant made and entered into a certain other contract, by which the defendant then and there "agreed and promised, to pay to the plaintiffs for all logs then cut, but not delivered, by the plaintiffs under the first

mentioned contract, at the rate of $5.00 per thousand feet, bank scale; the said logs to be delivered by the plaintiffs in the boom,—meaning and intending thereby, the boom situated in Elk river about three miles above its mouth; and that the said defendant, by the said last mentioned contract, further promised and agreed to advance to the plaintiffs, on said last mentioned contract, the sum of $3,000.00, of which $1,000.00 was to be paid in one month; $1,000.00 was to be paid in two months, and $1,000.00, was to be paid in three months from the date of said contract; and further to pay to the said plaintiffs the balance, that might be due upon said contract, last mentioned, at one, two, and three months after the last of the said logs, so cut, should be delivered in the boom aforesaid." "And the plaintiffs further say, that the said defendant, by the said last mentioned contract, further agreed and promised the plaintiffs, that they, the plaintiffs, should have the privilege at their, the plaintiffs', option, to cut other logs upon the said lands during the time, that they, the plaintiffs, should be occupied in and about the driving and delivering, as aforesaid, of the said logs, then already cut, as aforesaid, and that it, the defendant, would take and receive from the plaintiffs all logs, so cut, as last aforesaid, and pay the plaintiffs therefor at the same rate, and in like manner, as for the logs then already cut, as aforesaid.

"And the plaintiffs aver, that at the time of the making of the said last mentioned contract, to-wit, on the said 23d day of July, 1872, they, the said plaintiffs, then had cut and upon the said land a large quantity of logs, to-wit: 1,500,000 feet, bank scale; and that afterwards to-wit, between the said 23d day of July, 1872, and the —— day of January, 1873, they, the said plaintiffs, delivered to the defendant, in the boom aforesaid, according to the terms of the said last mentioned contract, 1,200,000 feet, bank scale, of said logs, leaving undelivered 300,000 feet, bank scale, of said logs. And the plaintiffs aver, that at the time of the making of said two

contracts, above mentioned, the *defendant had not, and has never since had, any right, title or claim whatever to the said tract of land, or to the timber thereon;* and that they, the said plaintiffs, were prevented from delivering the residue of said logs by no act or default of theirs, but solely by reason of the defendant, having no right or title to said land and timber, and of a certain order of injunction, awarded by the circuit court of the said county of Kanawha, in a certain suit in chancery, lately pending therein, in which William H. Edwards and others were plaintiffs, and H. Brockerhoof and others were defendants, which said order of injunction was issued on the 13th day of January, 1873, and enjoined and inhibited the plaintiffs, and all other defendants to said suit, from cutting any timber and from removing any timber already cut, on and from the lands aforesaid; and the plaintiffs aver, that the said order of injunction was granted for and on account of the acts and default of the defendant and the persons owning its stock.

"And the plaintiffs further say, that during the time they were delivering the said logs, as aforesaid, to-wit, between the said 23d day of July, 1872, and the said — day of January, 1873, they, the said plaintiffs, under and by virtue of the said contract last aforesaid, cut upon the said lands, and delivered to the defendant in the boom aforesaid, a large quantity of certain other logs, to-wit, 500,000 feet, bank scale; and so the plaintiffs say, that by the terms of the said last mentioned contract, and by reason of the delivery by the plaintiffs to the defendant, as aforesaid, of the said logs already cut, to-wit, 1,200,000 feet, bank scale, thereof, and of the cutting and delivery of said other logs, as aforesaid, to-wit, 500,000 feet, bank scale, thereof, the defendant heretofore, to-wit, on the 1st day of March, 1874, became and was indebted to the plaintiffs in the sum of $8,500.00; and being so indebted, in consideration thereof, then and there promised to pay the plaintiffs the said sum of $8,500.00 upon request, nevertheless the defendant,

although thereunto often requested, has not paid to the plaintiffs, or to either of them, the said sum of money, or any part thereof, but the whole and every part thereof still remains due and unpaid, to the damage of the plaintiffs, $10,000.00."

As stated by the counsel for the plaintiffs briefly, this count alleges: 1st, the contract of 1871, by which the plaintiffs agreed to cut and saw a large quantity of lumber from a tract of land, claimed to be owned by the defendant, and the price, agreed to be paid to the plaintiffs by the defendant; 2d. the modification of the original contract by a new contract of July 23, 1872, by which the plaintiffs agreed to deliver into the boom the logs, already cut, at the compensation of $5.00 per thousand feet by the defendant; 3d. that the defendant also agreed, that the plaintiffs should have the privilege of cutting any additional logs, on the same land, while they were occupied in driving and delivering the logs, already cut, and it would receive them, and pay for them as for the other logs; 4th. the delivery by the plaintiffs of 1,200,000 feet of the logs, cut on the original contract, and 500,000 feet, cut under the new contract, into the boom; 5th. the assumpsit by the defendant to pay the contract price for the logs, so delivered, and its failure to pay the same.

It is well said, that "in general, whatever circumstances are necessary to constitute the cause of complaint, or the ground of defense, must be stated in the pleadings, and all beyond is surplusage." Chitt. Pl. (16th ed.) 236. "The statement of immaterial, or irrelevant matter, or allegations, is not only censured, as creating unnecessary expense, but also frequently affording an advantage to the opposite party, either by affording him matter of objection, on the ground of variance, or as rendering it incumbent on the party pleading, to adduce more evidence, than would otherwise have been necessary. It is therefore of the greatest importance in pleading, to avoid any unnecessary statement of facts, as well

Syllabus 1

34

1878
Special Term.
Patton & Shaver
v
Elk River N. Co

as prolixity in the statement of those, which may be necessary." *Id.* 252.

"If however the matter, unnecessarily stated, be wholly foreign and irrelevant to the cause, so that no allegation whatever on the subject was necessary, it will be rejected as surplusage, and it need not be proved; nor will it *vitiate even on a special demurrer*, it being a maxim, that *utile per inutile non vitiatur*." *Id.* 252. See also *Sike* v. *Becker*, 1 Denio. 568; *Burton & Co.* v. *Hansford*, 11 W. Va. 474.

Syllabus 2

Applying these general and common rules to this count, it seems, that the allegations, as to the defendant not having title to the land, were wholly unnecessary. It was a circumstance, not necessary to constitute the cause of complaint, whether the defendant had title to the land, or not, as that count shows the cause of action to be the breach of the contract on the part of the defendant, merely in refusing to pay the plaintiffs for the logs actually delivered to it per contract by the plaintiffs. The count is sufficient in all essentials without the allegations as to title, so that judgment according to law and the very right of the case could be given, and those allegations being mere surplusage, no proof was necessary as to title, and therefore no harm could have been done the defendant.

The second special count is subject to like criticism as the first, in alleging more, than was necessary to constitute the cause of complaint. The real cause of complaint, in that count, is the claim, it makes for the three hundred thousand feet of logs, which the plaintiffs cut, but were prevented from delivering into the boom, by no act or default of theirs, but by reason of a certian order of injunction, awarded by the circuit court of Kanawha county, in a certain suit in chancery, therein pending, which order of injunction, the plaintiffs aver, was granted solely for and on account of the acts and default of the defendant, and of the persons owning the stock thereof, and that they had lost the profits, which

would have accrued to them from the delivery of same, which, they aver, would have amounted to the sum of $1,000.00

Now it is plain, that if it be true, that the plaintiffs did cut the alleged three hundred thousand feet, bank scale, of logs, and were prevented from delivering the same by reason of the injunction being awarded, as alleged, on account of the acts of the defendant, then the plaintiffs are entitled to recover the contract price of the logs, so cut and not delivered, less the expense or cost necessary to make the delivery; this I understand to be the direct profit, contemplated as the measure of damages, in such cases; and this view accords with the doctrine, recognized in *Masterton* v. *Mayor &c., of Brooklyn,* 7 Hill 61 where it was held, "that the measure of damages, in respect to so much of the contract, as remained wholly unperformed, at the time of the breach was the difference between what the performance would have cost the plaintiffs, and the price, which the defendant had agreed to pay."

Syllabus 4

Such seems to be the reasonable and correct doctrine, and was so recognized by the Supreme Court of the United States, in the case of *Philadelphia, Wilmington & Baltimore R. R. Co.* v. *Howard,* 13 How. (U. S.) 307.

Syllabus 3

Therefore, such being the true measure of damages in such cases, it is clear, that all other allegations, as to the large sums of money expended in purchasing horses, mules and wagons, and employing laborers, cannot be considered in any other light than mere surplusage, and under the principles, enunciated relative to the first special count, should be disregarded; and no evidence could be required thereon.

The demurrer to the declaration and each count thereof was properly overruled.

The defendant assigns as error, that, " upon the trial of the cause, the court allowed plaintiffs to- place in evidence before the jury a part of the contract sued on, which was taken from the books of defendant, and not the

Syllabus 5

entire contract, although the entire contract was present in court." This supposed error forms the ground for the defendant's first bill of exceptions. For a proper understanding of the point, raised by that assignment of error, it will be well to set out that bill in full, which is as follows:

"*Be it remembered,* That on the trial of this cause, and as the first evidence offered by the plaintiffs, to prove the issues on their part, the plaintiffs offered in evidence a copy of a resolution of the board of directors of the defendants, passed July 23, 1872, attested by its secretary, in the words and figures following, to-wit:

" 'Resolutions passed at a meeting of the Elk River Navigation Company, held in Charleston, July 23, 1872:

" '*Resolution.*

" '*Resolved,* That the contract of this company with Patton & Shaver be rescinded, and that when rescinded, we agree to pay to them for the logs already cut, at the rate of five dollars ($5.00) per M, bank scale, delivered in the boom, the company to advance to them $3,000.00 in manner following: $1,000.00 in one (1) month; $1,000.00 in two (2) months; $1,000.00 in three (3) months from this date; the balance to be paid at one (1), two (2), three (3) months after the last of the logs so cut have been delivered in the boom. It is further agreed that the said Patton & Shaver shall have the privilege, at their option, to cut other logs in the vicinity and within the boundary of the contract during the time, that they shall be occupied in and about the driving of the logs already cut, and which logs shall be taken and paid for by the company in like manner.

" 'In compliance with the above resolution, the terms of resolution are recorded and accepted by us on receipt, of date July 24, 1872:

Amount draft on H. Brokerhoof, Treasurer, 1 month, $1,000 00
Amount    "        "          "          " 2 months, 1,000 00
Amount    "        "          "          " 3 months, 1,000 00
                                                     ―――――――
                                                     $3,000 00

" 'Attest:        P. H. GALLIGHER, *Secretary.*

"'Which was admitted by the defendants to be a true copy of the resolution, but not admitted to contain the whole proceedings on the books of the defendant of that date in reference to the contract, and which the defendant had agreed, before trial, should be used the same, as the original might; and the plaintiffs, in connection with the offer of said resolution, proved, that it was delivered to them by the secretary of the defendant, as and for the contract between them; and thereupon the defendant objected to said resolution being given in evidence to the jury, upon the ground that it contained only part of the contract between the parties, as it offered to show by its original books, produced in court, and which it offered to prove, which, defendant claimed, contained the full contract between the parties, and asked the court to require the plaintiffs to give to the jury, as part of their evidence, in connection with said resolution, the following matters in writing, on said book on pages forty-six and forty-seven:

"'*Extract from Book.*

'[Pages 46 and 47.]

'DIRECTORS' MEETING,
ELK RIVER NAVIGATION COMPANY,
July 23, 1872.

"'Messrs. Patton & Shaver then presented two propositions, number one and two, as follows:

"'EDWARD LAND COMPANY:

"'*Gentlemen:* According to your request, we submit to you the following propositions:

"'1st. That the company build, or furnish the means necessary to build, a circular-saw mill on our lot on the Elk river. We will have the property well insured for your benefit, or you can take any measures to secure yourselves you may think proper. We will pay twelve per cent on the money until the mill is paid for.

"'2d. That if the company think it is not to their

advantage to build us this mill, that they will cancel the contract by paying us the amount we have expended, $5,500.00, with such allowance for our services (almost a year) as they may think just.

" 'Very respectfully,
"(Signed.)        'PATTON & SHAVER.'

" '*Resolved.* That the further consideration of Messrs. Patton & Shaver's proposition be postponed for the present.

" 'Passed.

" 'After recess, met at 3 o'clock P. M., and

" '*Resolved*, That the President of this Company be and is hereby authorized and instructed to purchase any stock procurable of this company, and sufficient to reduce the number of shares to one thousand, and hold the same for this company, paying for the same by draft on the treasurer of this company, at one, two, three, four, or six months, notifying the treasurer of the purchase and terms of same.

" '*Carried.*

" 'DIRECTORS' MEETING, ELK RIVER NAV. CO.,
                    July 23, 1872,

" '*Resolved.* That the contract of this company with Messrs. Patton & Shaver be rescinded, and that when rescinded, we agree to pay to them for the logs already cut, at the rate of ($5) five dollars per (M) thousand feet, (board measure) bank scale, delivered in the boom, the company to advance to them ($3,000.00) three thousand dollars in the following manner: $1,000.00 in one month; $1,000.00 in (2) two months, and $1,000.00 in three months from this date, the balance to be paid at one, two and three months after the last of the logs so cut have been delivered in the boom.

" 'It is further agreed that the said Patton & Shaver shall have the privilege, at their option, to cut other logs in the same vicinity, and within the boundaries of

said contract during the time, that they shall be occupied in and about driving the logs already cut, and which logs shall be taken and paid for by the company in like manner.

1878
Special Term.

Patton & Shaver
v.
Elk River N. Co

" 'CHARLESTON, WEST VA., }
July 24, 1872. }

" '*To the President of the Elk River Navigation Co.:*

" 'The resolution concerning the rescinding of our log contract with you, passed by your company, July 23, '72, has been submitted to us, and we agree to consent to the same as per said resolution.

(Signed)         " 'GEO. W. PATTON.
               " 'J. R. SHAVER.'

"But the court being of opinion that the evidence offered by the plaintiffs was at this stage of the case competent to go to the jury by itself, and that the defendant could prove its version of the contract when it came to give its evidence to the jury, overruled the defendant's objection, and permitted the plaintiff, to give the said resolution in evidence to the jury in connection with the proof aforesaid. To which opinion and ruling of the court, the defendant excepts, and prays that these, its exceptions, may be signed, sealed and saved to it, which is done.

"EDW. B. KNIGHT.   [Seal.]"

Hence it appears from this bill of exceptions, that the defendant's objection is not to the admissibility of the copy of the resolution, offered by the plaintiffs, and which was considered by the plaintiffs as the evidence of the modified contract, relied on by them to sustain their action; but its objection to the ruling of the court is, that the court refused to compel the plaintiffs, to introduce from the records of the proceedings of the defendant's board of directors other resolutions and proceedings, as evidence in behalf of the plaintiffs.

1878
Special Term.

Patton & Shaver
v.
Elk River N Co.

Syllabus 5 I II
I know of no rule of practice, under which the court would have the power to compel the plaintiffs to introduce any evidence, to sustain the issue on their part. If the plaintiffs do not introduce any evidence to prove the contract, or if they introduce evidence, not admissible by itself, and fail to follow it with other evidence, to make it admissible, it is to their own folly and loss, and not to the injury of the defendant.

The court in this instance simply held, what it properly had a right to do, that the evidence offered by the plaintiffs, at that stage of the cause, was competent to go before the jury by itself, and that the defendant could prove its version of the contract, when it came to give its evidence to the jury. Had the resolution been inadmissible by itself, which the court properly did not think it was, and the court had allowed it to be introduced at that stage of the case, to be followed by other evidence to make it admissible, and the plaintiffs had failed to so follow it, the court would have instructed the jury to disregard it, *Alderson* v. *Miller*, 15 Gratt. 279; but would not have compelled the plaintiffs to have introduced the other evidence; and for the stronger reason it properly in this case refused to compel the plaintiffs to introduce the matters, demanded by the defendant. And, as was said in argument, when reference is made to those matters, it will be seen, they form no part of the contract.

The first paper, proposed to be offered, was mere propositions from plaintiffs, never accepted, nor rejected, by the defendant; the second was an authority from the defendant to its president, to purchase a portion of its capital stock; and the third was a copy of the same resolution, which the plaintiff had already offered as the contract sued on, with the addition of a memorandum of acceptance by the plaintiffs. But on the other hand had they been important, as matter of evidence, on behalf of the defendant, it was the proper party to have introduced them, and not the plaintiffs.

Syllabus 5 II

The court did not err in that respect.

1878
Special Term.
Patton & Shaver
v.
Elk River N. Co

It appears from the defendant's second bill of excep-tion, that the defendant asked the court for the following instructions, after setting out the said resolution, showing the modified contract: "If the jury believe from the evidence, that the time, in which the logs, in the contract mentioned, were to be delivered, was not specified in the contract, then the plaintiffs, Patton & Shaver, were obliged by said contract, to deliver said logs, and perform their part of said contract within a *reasonable time;* and what was a reasonable time, the jury must determine from the evidence in the case." But the court refused to give the instruction.

There is nothing to show, what was the original contract; this bill of exceptions is silent, as to the original contract, and merely sets out the resolution, which refers to the original, declaring it rescinded, but in fact only modifying it, as to the price the company would pay the plaintiffs for logs, cut under the first contract, delivered in the boom, and giving the plaintiffs " privilege, at their option, to cut other logs in the vicinity, and *within the boundaries of the contract* during the time, that they shall be occupied in and about the driving of the logs already cut, and which logs shall be taken and paid for in like manner." Whether that contract was verbal or written, this bill of exceptions does not show. What was the requirement of the contract, as to the time of delivery, and whether any evidence had been introduced, as to the time of delivery, does not appear from this bill of exceptions, nor from anything in the record, that it can be connected with. Yet it may be possible, the original contract specified a time certain for the delivery of the logs. In this state of the case, as presented to us by this bill of exceptions, I think we should follow the rule, laid down in *Fitzhugh's ex'r* v. *Fitzhugh,* 11 Gratt. 308. In the absence of the facts we cannot undertake to decide, whether the court did right, or wrong, in refusing to give the instruction.

Syllabus 5 IV

Syllabus 6

35

1878.
Special Term.

Patton & Shaver
v.
Elk River N.Co.

It appears from the defendant's third bill of exceptions, that after the said resolution, showing the modified contract, and also the record of the chancery suit of *Wm. H. Edwards et al.* v. *Brockerhoff, &c.,* showing the granting of the injunction, were given in evidence by the plaintiffs; and it was further proved by them, that all of the defendants in said chancery suit, except Patton & Shaver, and two others, were stockholders in said defendant; and after the plaintiffs had introduced evidence on other matters not pertinent to the question now under consideration; evidence was then introduced by the defendant, tending to prove, that after the injunction, granted in said suit, was served on the plaintiffs, on the 21st of January, 1873, and before the 31st of March, 1873, an agreement was entered into between all the parties litigant in said chancery suit, except Patton & Shaver, permitting Patton & Shaver to remove all logs, already cut by them under their contract with the defendant, but not permitting them to cut any other logs, and that plaintiffs were notified of such agreement prior to the 31st of March, 1873. The defendant then asked the court to give the two following instructions:

### [*No.* 1.]

"If the jury from the evidence believe, that there was a written contract put in evidence before them, which was the basis of this action, then the plaintiffs were bound under the terms of their said contract with the defendant, to put all the logs, cut by them, into the boom, named in said contract in writing, and that they are limited in their recovery in this action to the logs, actually run into said boom, and cannot recover for logs, cut by them and not so delivered in said boom."

### [*No.* 2.]

"If the jury from the evidence believe, that plaintiffs were enjoined from cutting, and removing logs already cut, by an injunction sued out in Kanawha circuit court, from

21st January to 31st of March, 1873, and that on and after <span>1878. Special Term.</span> 31st March, 1873, the injunction was so far modified by <span>Patton & Shaver v. Elk River N. Co.</span> agreement between the litigants in the injunction suit, that permission was then granted the plaintiffs to remove the logs, that then the plaintiffs were as much bound to deliver the logs, cut under the contract, into the boom, as though there had been no injunction."

But the court refused to give said instructions to the jury, and gave to the jury in lieu thereof three instructions in writing, marked A, B and C, in the words and figures following, to-wit:

### Instruction A.

"The jury are instructed, that the plaintiffs are entitled to recover the contract price for all logs, which, the jury believe from the evidence, were cut by the plaintiffs for the defendant under the contract, set out in the declaration, and which were delivered by the plaintiffs into the boom, mentioned in the contract, after the 23d day of July, 1872."

### Instruction B.

"If the jury find from the evidence, that the plaintiffs cut logs for the defendant under the contract, set out in the declaration, which were not delivered into said boom, and that the plaintiffs were prevented * * * * from making such delivery by any act, or by the fault of the defendant, for the logs, so cut and not delivered, the plaintiffs are entitled to recover the difference between the contract price and the reasonable cost of delivering such logs in said boom."

### Instruction C.

"If the jury find from the evidence, that the plaintiffs cut logs for the defendant under the contract, set out in the declaration, which were not delivered in the boom aforesaid, and that the failure to deliver the said logs resulted from the voluntary act or negligence of the

plaintiffs, then the plaintiffs are not entitled to recover in this action for the logs, so cut and not delivered."

To which last named instructions the defendant took no exception.

To the opinion of the court, in refusing to give to the jury the said instructions, numbers one and two, the defendant excepts.

It is argued, that the court erred in refusing to give the instruction, numbers one and two.

As to the first instruction, it might well have been refused, because it is so imperfectly expressed, that its true import is not readily discernible, and would tend to mislead the jury. But, if free from that objection, the facts proven, as stated in this third bill of exceptions, show, that the plaintiffs were not in fault, but that they were prevented from delivering the logs into the boom by the acts and default of the defendant; thus bringing the case under the principles, laid down in *Masterton* v. *Mayor of Brooklyn*, and *P. W. & B. R. R. Co.* v. *Howard*, as to the true measure of damages. See also 2 Smith's L. C. 7 Am. ed. 151. And again, the original contract is not set out in the bill of exceptions, the Appellate Court cannot assume, that the court below erred, in refusing to give the instruction, but must hold, that in this instruction, if it is capable of interpretation at all, there is such a mixture of *facts* with *law*, and which necessarily would demand the opinion of the court on both, as to necessitate the court to either refuse the instruction, so as not to infringe the powers of the jury, or to discriminate between the facts and law, which it is not bound to do.

The second instruction, asked for by the defendant, is objectionable. The defendant having by its own act and default prevented the plaintiffs from delivering the logs, it is absurd to say, that the law should compel the plaintiffs at any time to deliver them upon the mere agreement of the stockholders, without the consent or agreement of the plaintiffs, and that too, while the injunction

is still in force. Such is not the law. Upon the author-

ities, before cited, the plaintiffs were entitled to recover
from the defendant for the logs, they were prevented
from delivering by the acts and default of the de-
fendant, at the contract price less the cost of delivering
the logs into the boom.

The defendant did not except to the court giving the
instructions A. B. and C. ; and although it intimated in
argument, that the giving of ·those instructions was
error,· the Appellate Court is not called upon to pro-
nounce upon them. But if necessary to decide thereon,
I would be free to say, that they state the law correctly,
governing this case, so far as the record presents the
facts.

The defendant moved the court to set aside the ver-
dict, and award a new trial, which motion was overruled.
No exceptions were taken to that·ruling of the court in
that respect ; and as the record does not disclose the facts
proven, on which the verdict was found, the Appellate
Court must declare, that the record discloses no error,
and that the judgment complained of should be affirm-
ed with costs and damages according to law.

THE OTHER JUDGES CONCURRED.

JUDGMENT AFFIRMED.