GAVENDA BROTHERS, INC.

*v.*

ELKINS LIMESTONE COMPANY, INC.

(No. 12012)

Submitted September 13, 1960. Decided November 22, 1960.

*Hyer, Gibson & Talbott,* for plaintiff in error.

*Higginbotham & Graziani,* for defendant in error.

HAYMOND, JUDGE:

This is an action of debt instituted in the Circuit Court of Randolph County in 1958, in which the plain-

tiff, Gavenda Brothers, Inc., an Illinois corporation, seeks to recover from the defendant, Elkins Limestone Company, Inc., a West Virginia corporation, the sum of $1,293.31, with interest at the rate of 5% on $1,259.56 of that sum from September 23, 1957. The action is based upon a judgment obtained by the plaintiff against the defendant in the Circuit Court of Fulton County, Illinois, for $1,259.56 and taxable costs of $33.75.

To the declaration the defendant filed an amended special plea in which it challenged the validity of the judgment on the ground that the Circuit Court of Fulton County, Illinois, was without jurisdiction to enter a judgment against the defendant, a West Virginia corporation, whose principal place of business is in Randolph County, West Virginia. The amended special plea alleges that the defendant has never been a resident of the State of Illinois or of Fulton County in that State, that neither the defendant nor any of its agents or employees was ever in or engaged in business in the State of Illinois, that the defendant was not authorized to do business in that State, that the defendant was not amenable or subject to the jurisdiction of the court in which the judgment was rendered, and that it was not served with process in West Virginia and did not have legal notice of the pendency of the action in the Illinois court.

The plaintiff filed a replication to the amended special plea of the defendant in which it alleged that the defendant by its agent in Fulton County in the State of Illinois executed a conditional sales contract and purchased from the plaintiff certain tangible personal property then in that county and state and executed and delivered to the plaintiff certain notes representing a part of the purchase price for such property; that by reason of such transaction in Fulton County, Illinois, the defendant became subject to the jurisdiction of the Circuit Court of Fulton County, Illinois; and that the defendant was personally served in the State of West Virginia with process issued in

the action instituted by the plaintiff in the Circuit Court of Fulton County, Illinois.

The material facts, which are not disputed, were submitted to the circuit court in lieu of a jury by a written stipulation between the attorneys for the respective parties. Upon the facts set forth in the stipulation the circuit court, by order entered July 3, 1959, rendered judgment for the plaintiff for $1,293.31 with interest on $1,259.56 of that amount at 5% from September 23, 1957, and costs. To that judgment this Court granted this writ of error and supersedeas upon the application of the defendant.

On December 3, 1956, in Fulton County, Illinois, the defendant, represented by its president, entered into a conditional sales contract with the plaintiff for the purchase of certain personal property of the plaintiff located in that county and state for the purchase price of $5,330.00. Of that amount $1,830.00 was payable upon the delivery of the property and the residue of $3,500.00 was represented by seven notes in the principal sum of $500.00 each, due in one, two, three, four, five, six and seven months after date, with interest at 5%. Each of these notes contained a provision which authorized any attorney of any court to appear for the defendant in any court at any time after maturity and confess judgment against it in favor of the holder of such note for the amount due on such note and costs and a reasonable attorney fee. All the notes were executed and delivered by the defendant to the plaintiff in Fulton County, Illinois. The property purchased by the defendant was delivered to it by the plaintiff in Illinois or shipped to the defendant and received by it in Randolph County, West Virginia. The defendant made default in the payment of the notes due in three, four and seven months after date in the principal amount of $1,094.56 and, in the action instituted August 15, 1957, in the Circuit Court of Fulton County, Illinois, judgment was rendered against the defendant for that amount and an attorney fee of $165.00, or the total sum of $1,259.56

by order entered September 23, 1957. The summons in that action was not served upon the defendant in the State of Illinois but was personally served upon the president of the defendant in Randolph County on August 20, 1957. The defendant did not appear in the action instituted against it in the Circuit Court of Fulton County, Illinois, and judgment was rendered against the defendant by default.

The action in the Illinois court was based upon a statute of that State which rendered persons who engaged in certain enumerated acts subject to the jurisdiction of the courts of that State. That statute, known as the Civil Practice Act, as amended, in Section 17 contains these provisions:

"(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this State;

"(b) The commission of a tortious act within this State;

"(c) The ownership, use, or possession of any real estate situated in this State;

"(d) Contracting to insure any person, property or risk located within this State at the time of contracting.

"(2) Service of process upon any person who is subject to the jurisdiction of the courts of this State, as provided in this section, may be made by personally serving the summons upon the defendant outside this State, as provided in this Act, with the same force and effect as though summons had been personally served within this State.

"(3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section.

"(4) Nothing herein contained limits or affects the right to serve any process in any other manner now or hereafter provided by law."

Section 16 of the same statute provides, in part, that: "Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State; otherwise it shall have the force and effect of service by publication. * * *."

The defendant assigns as error the action of the circuit court in holding that the defendant was subject to the jurisdiction of the Circuit Court of Fulton County, Illinois, at the time of the entry of its judgment on September 23, 1957 and in including in the judgment the item of $165.00 as the fee allowed the attorney for the plaintiff for his services rendered in connection with the entry of the judgment by the Illinois court.

The settled law in this jurisdiction is that a judgment rendered by a court of another state or by a court of this State is subject to attack for lack of jurisdiction to render such judgment or for fraud in its procurement. *Stephenson v. Ashburn,* 137 W. Va. 141, 70 S. E. 2d 585; *Bennett v. Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Cable v. Cable,* 132 W. Va. 620, 53 S. E. 2d 637; *Perkins v. Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Turner v. Stewart,* 51 W. Va. 493, 41 S. E. 924; *Gilchrist v. West Virginia Oil and Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555.

This Court has also held, in many cases, that a void judgment, being a nullity, may be attacked, collater-

ally or directly, at any time and in any court whenever any claim or right is asserted under such judgment. *State ex rel. Cecil v. Knapp,* 143 W. Va. 896, 105 S. E. 2d 569; *State ex rel. Leeber and Covey v. The Board of Education of The County of Raleigh,* 143 W. Va. 584, 103 S. E. 2d 797; *State of West Virginia ex rel. Browning v. Tucker,* 142 W. Va. 830, 98 S. E. 2d 740; *State ex rel. Vance v. Arthur,* 142 W. Va. 737, 98 S. E. 2d 418; *State ex rel. Lovejoy v. Skeen,* 138 W. Va. 901, 78 S. E. 2d 456, certiorari denied, 349 U. S. 940, 75 S. Ct. 786, 99 L. Ed. 1268; *Bennett v. Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Stephenson v. Ashburn,* 137 W. Va. 141, 70 S. E. 2d 585; *Cable v. Cable,* 132 W. Va. 620, 53 S. E. 2d 637; *Evans v. Hale,* 131 W. Va. 808, 50 S. E. 2d 682; *Pettry v. Hedrick,* 124 W. Va. 113, 19 S. E. 2d 583; *Perkins v. Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Hayhurst v. J. Kenny Transfer Company,* 110 W. Va. 395, 158 S. E. 506; *New Eagle Gas Coal Company v. Burgess,* 90 W. Va. 541, 111 S. E. 508; *Jones v. Crim,* 66 W. Va. 301, 66 S. E. 367; *Roberts v. Hickory Camp Coal and Coke Company,* 58 W. Va. 276, 52 S. E. 182; *St. Lawrence Boom and Manufacturing Company v. Holt,* 51 W. Va. 352, 41 S. E. 351; *Hoback v. Miller,* 44 W. Va. 635, 29 S. E. 1014; *Fowler v. Lewis's Adm'r.,* 36 W. Va. 112, 14 S. E. 447; *Haymond v. Camden,* 22 W. Va. 180; *Camden v. Haymond,* 9 W. Va. 680.

Under Section 1, Article IV of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State. *Bennett v. Bennett,* 137 W. Va. 179, 70 S. E. 2d 894; *Paull v. Cook,* 135 W. Va. 833, 65 S. E. 2d 750; *Pukas v. Pukas,* 129 W. Va. 765, 42 S. E. 2d 11; *Perkins v. Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *International Harvester Company of America v. Solazo,* 116 W. Va. 34, 178 S. E. 429; *Campbell v. Switzer,* 74 W. Va. 509, 82 S. E. 319; *Roller v. Murray,* 71 W. Va. 161, 76 S. E. 172; *Crumlich's Administrator v. Central Improvement Company,* 38 W. Va. 390, 18 S. E. 456, 23 L.R.A. 120, 45 Am. St. Rep. 872; *Gilchrist*

*v. West Virginia Oil and Oil Land Company,* 21 W. Va. 115, 45 Am. Rep. 555; *Coleman v. Waters,* 13 W. Va. 278.

The controlling question for decision in this case, which is one of first impression in this State, is whether the Circuit Court of Fulton County, under the above quoted Illinois statute, had jurisdiction to render the judgment against the defendant at the time of its entry on September 23, 1957 in the action then pending in that court. There is no contention of any fraud in the procurement of the judgment and if the court had jurisdiction to render the judgment it is valid and binding and must be given full faith and credit in this State. If, however, the court was without jurisdiction to render the judgment such judgment is void and is not entitled to the benefit of the full faith and credit clause of the Federal Constitution.

The jurisdiction of the Illinois court to render the judgment in question depends upon the constitutionality of the applicable provisions of Sections 16 and 17 of the Illinois Civil Practice Act, as amended. If that statute is a valid enactment which does not offend, but instead satisfies, the requirements of due process imposed by the Fourteenth Amendment to the Constitution of the United States and by Section 10, Article III of the Constitution of this State, the Illinois court had jurisdiction to enter the challenged judgment and the judgment is valid, is entitled to full faith and credit, and will be recognized and enforced by the courts of this State.

The history of controversies involving the jurisdiction of a court of a state to render a personal judgment or decree against a person who while outside the territory of the state is served with process in a pending proceeding indicates a constantly increasing trend to expand the jurisdiction of the court and to effectuate the exercise of such jurisdiction.

Initially the jurisdiction of courts to render a personal judgment was based upon their actual power

over the person of the defendant and his presence within the territorial jurisdiction of the court was essential to enable it to render a judgment which bound him personally. In the well known case of *Pennoyer v. Neff*, 95 U. S. 714, 24 L. Ed. 565, decided at its October Term, 1877, the Supreme Court of the United States held that substituted service by publication, or in any other authorized form, is sufficient to inform a nonresident of the object of proceedings taken, where property is once brought under the control of the court by seizure or some equivalent act; but that where the suit is brought to determine his personal rights or obligations, that is, where it is merely *in personam*, such service upon him is ineffectual for any purpose; that process from the tribunals of one state can not run into another state and summon a party there domiciled to respond to proceedings against him; that publication of process or of notice within the state in which the tribunal sits can not create any greater obligation upon him to appear; and that process sent to him out of the state, and process published within it, are equally unavailing in proceedings to establish his personal liability.

After the decision in the *Pennoyer* case the advent of the automobile and the rapid extension of its use operated to change and expand the original jurisdictional concepts. Far-reaching social, technological and legal developments and progress in communications and transportation led to the fiction of consent in the expansion of the jurisdictional concept as exemplified in the widespread enactment of state statutes which provided for substituted service on nonresident motorists who cause injuries within a state while using its highways. As the flow and extent of commerce among the states has increased, the need for jurisdiction over nonresidents has also increased. In such circumstances it was inevitable that state legislatures should act to make the nonresident motorists amenable to the process of the courts and that the courts should hold that statutes enacted to serve the need were a valid exercise

of the police power which did not conflict with or transcend constitutional guarantees. The fiction that the use of the highways of a state by a nonresident motorist constitutes implied consent to the appointment of one of its officials as his agent on whom process may be served in proceedings growing out of such use was the basis for the decision in *Hess v. Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091, which sustained the jurisdiction of a state court to enter a personal judgment against a nonresident motorist on the assumption that by virtue of a state statute the use of highways of the state was equivalent to the appointment of a state official as agent to accept service of process in behalf of the nonresident motorist.

Subsequent to the decision in *Hess v. Pawloski,* 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091, and kindred cases involving statutes relating to nonresident motorists who use highways of a state, the consent concept, which ignored the actuality that the nonresident motorist in fact did not consent but was unwilling to be sued by reason of his use of the highways, has been in some decisions departed from or discarded, and the jurisdictional concept has been extended and placed on the present basis of the legitimate interests of the state in providing redress in its courts against nonresidents who, having substantial contacts with the state, incur obligations or cause injuries to those entitled to the protection of the state in which such obligations are incurred or such injuries are inflicted.

In *Olberding v. Illinois Central Railroad Company,* 346 U. S. 338, 74 S. Ct. 83, 98 L. Ed. 39, the opinion contains this language: "It is true that in order to ease the process by which new decisions are fitted into pre-existing modes of analysis there has been some fictive talk to the effect that the reason why a nonresident can be subjected to a state's jurisdiction is that the non-resident has 'impliedly' consented to be sued there. In point of fact, however, jurisdiction in these cases does not rest on consent at all. See Scott, Jurisdiction over Nonresident Motorists, 39 Harv. L. Rev.

563. The defendant may protest to high heaven his unwillingness to be sued and it avails him not. The liability rests on the inroad which the automobile has made on the decision of *Pennoyer v. Neff*, 95 U. S. 714, as it has on so many aspects of our social scene. The potentialities of damage by a motorist, in a population as mobile as ours, are such that those whom he injures must have opportunities of redress against him provided only that he is afforded an opportunity to defend himself. We have held that this is a fair rule of law as between a resident injured party (for whose protection these statutes are primarily intended) and a non-resident motorist, and that the requirements of due process are therefore met. *Hess v. Pawloski*, 274 U. S. 352. But to conclude from this holding that the motorist, who never consented to anything and whose consent is altogether immaterial, has actually agreed to be sued and has thus waived his federal venue rights is surely to move in the world of Alice in Wonderland.''

The expansion of the jurisdiction of the courts of a state to render a personal judgment against a non-resident who was not served with process within the state is, of course, limited by the due process clause of the Fourteenth Amendment. The requirement that a defendant be accorded due process of law imposes two separate restraints with respect to the exercise of such jurisdiction. It must appear that the defendant over whom jurisdiction is asserted has had minimum contact within the state which renders it consistent with traditional notions of fair play and substantial justice that he be compelled to defend himself in that state; and, assuming the existence of such requisite minimum contact, there must be a method of service which is designed to give the defendant actual and reasonable notice of the pending action against him.

The consciously underlying purpose of the Illinois Civil Practice Act, as amended, and the public policy of that state as indicated by that statute, are to as-

sert jurisdiction over nonresident defendants to the extent permitted by the constitutional due process provisions, if such defendants engage in certain enumerated acts or conduct within the state. The public policy of this State, though less comprehensive in scope, is in harmony with the public policy evidenced by the Illinois statute. This is manifest from the provisions of Section 71, Article 1, Chapter 31, Code, 1931, as amended by Chapter 20, Acts of the Legislature, Regular Session, 1957. To the extent here pertinent that section of the statute provides that: ''For the purposes of this section, a foreign corporation not authorized to do business in this State * * * shall nevertheless be deemed to be doing business herein if such corporation makes a contract to be performed, in whole or in part, by any party thereto, in this State, or if such corporation commits a tort in whole or in part in this State. The making of such contract or the committing of such tort shall be deemed to be the agreement of such corporation that any notice or process served upon, or accepted by, the auditor pursuant to the next preceding paragraph of this section in any action or proceeding against such corporation arising from, or growing out of, such contract or such tort shall be of the same legal force and validity as process duly served on such corporation in this State.''

In *Nelson v. Miller,* 11 Ill. 2d 378, 143 N. E. 2d 673, a Wisconsin corporation dealing in appliances, acting by its agents in delivering and unloading merchandise in Illinois, negligently injured a resident of that state. Process in the action instituted in an Illinois court was personally served on the defendant in Wisconsin. In declaring that the provisions of the statute did not operate to deny a nonresident due process of law the court held, following the reasoning of the Supreme Court of the United States in *International Shoe Company v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057, that the limits on the exercise of jurisdiction are not mechanical or quantitative, but consist only of the requirement that

statutory provisions conferring jurisdiction upon the courts of any state must be fair and reasonable in the circumstances and must give to the defendant adequate and realistic opportunity to appear and be heard in his own defense, and that statutory provisions conferring jurisdiction upon courts of a state to enter personal judgments upon personal service of process outside the state, meet the requirements of due process when the defendant to be served outside the state has had contacts with the state of the forum which make it reasonable that he be required to defend the particular action brought against him in that state. In the opinion the court said: ''The defendant sent his employee into Illinois in the advancement of his own interest. While he was here, the employee and the defendant enjoyed the benefit and protection of the laws of Illinois, including the right to resort to our courts. In the course of his stay here the employee performed acts that gave rise to an injury. The law of Illinois will govern the substantive rights and duties stemming from the incident. Witnesses, other than the defendant's employee, are likely to be found here, and not in Wisconsin. In such circumstances, it is not unreasonable to require the defendant to make his defense here. If, in a particular case, trial in an Illinois court will be unduly burdensome to the nonresident defendant, the doctrine of *forum non conveniens* is available. (*Whitney v. Madden,* 400 Ill. 185, 79 N. E. 2d 593 (1948).) Moreover, the nonresident defendant will in many cases have the privilege of removal to a Federal court (28 U. S. C., sec. 1441), in which case, after removal, a motion will lie under 28 U. S. C., sec. 1404(a) for a transfer to a more convenient district. (*Norwood v. Kirkpatrick,* 349 U. S. 29 (1955).) We hold that the requirements of due process of law have been met.''

In *Berlemann v. Superior Distributing Company,* 17 Ill. App. 2d 522, 151 N. E. 2d 116, the Appellate Court of Illinois, Fourth District, held valid a judgment entered by an Illinois court against a corporate defendant of Colorado, an officer of which was personally

served with process in Colorado, in an action for breach of contract which was entered into in Illinois between the plaintiff and the defendant, acting through an agent who was personally present in that state.

The constitutionality of the Illinois statute has been recognized by the United States Court of Appeals, Seventh Circuit, in recent cases. In *National Gas Appliance Corporation v. AB Electrolux,* 270 F. 2d 472, the plaintiff and the defendant, a Swedish corporation, each acting by its representatives who were personally present in Illinois, entered into a contract in that state. The plaintiff, asserting a breach of the contract by the defendant AB Electrolux, instituted an action against it and a Wisconsin corporation in the Federal district court in Illinois. The process in the action was personally served upon a representative of the defendant AB Electrolux in New York. On appeal to the circuit court of appeals from an order of the Federal district court denying the motion of the defendant AB Electrolux to dismiss the action or to quash the return of service of process, the circuit court of appeals upheld the constitutionality of the Illinois statute and the sufficiency of the service of process to enable the district court, under the Illinois statute, to assert jurisdiction of the cause of action against the defendant AB Electrolux and held that the acts of its representatives which occurred in Illinois constituted such minimum contacts with that state that the maintenance of the action there did not offend the traditional notion of fair play and substantial justice

In *Insull v. New York World-Telegram Corporation,* 273 F. 2d 166; *Kaye-Martin v. Brooks,* 267 F. 2d 394; and *Orton v. Woods Oil and Gas Company,* 249 F. 2d 198, the United States Court of Appeals, Seventh Circuit, recognized the constitutionality of the Illinois statute but held in each instance that the acts of the representatives of the defendants, which were foreign corporations, did not constitute minimum contacts in the State of Illinois, and for that reason such acts were not sufficient to render the defendant

subject to the provisions of the Illinois statute or to the jurisdiction of its courts.

Under the foregoing decisions of the State and Federal courts the application of the Illinois statute depends upon the particular facts in each case and upon the sufficiency of such facts to establish the minimum contacts which are an absolute prerequisite to the exercise of personal jurisdiction of the courts of that state over a nonresident defendant. See *International Shoe Company v. State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057; *Le Vecke v. Griesedieck Western Brewery Company*, 233 F. 2d 772; *West Publishing Company v. Superior Court*, 20 Cal. 2d 720, 128 P. 2d 777.

Statutes of the same general character as the Illinois statute, which assert jurisdiction of a state court over nonresident defendants, have been enacted in other states and the constitutionality of such statutes has been upheld by the courts. A Vermont statute, Section 1562 of the statutes of that state, providing for jurisdiction over any foreign corporation which makes a contract with a resident of Vermont to be performed in whole or in part by either party in that state, or which commits a tort in whole or in part in Vermont against a resident of that state, was held to be constitutional. *Smyth v. Twin State Improvement Corporation*, 116 Vt. 569, 80 A. 2d 664, 25 A.L.R. 2d 1193. A Maryland statute, Code of Maryland, 1951, Article 23, Section 88d, provides that foreign corporations shall be subject to the jurisdiction of the courts of that state on any cause of action arising out of a contract made within the state or liability incurred for acts done within the state regardless of whether such foreign corporation does or has done business in that state. That statute was held to be constitutional. *Compania De Astral, S. A. v. Boston Metals Company*, 205 Md. 237, 107 A. 2d 357, 108 A. 2d 372, 49 A.L.R. 2d 646, certiorari denied, 348 U. S. 943, 75 S. Ct. 365, 99 L. Ed. 738. See also *Johns v. Bay State Abrasive Products Company*, 89 F. Supp. 654.

In the leading case of *International Shoe Company v. State of Washington*, 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057, a nonresident corporation, chartered in the State of Delaware, employed salesmen in the State of Washington to take orders for merchandise but did not authorize them to enter into contracts in that state. The orders were transmitted to the office of the corporation in St. Louis, Missouri, for acceptance or rejection. The State of Washington brought an action in its state court against the nonresident corporation to compel it to pay contributions to the state unemployment compensation fund as required by a state statute. The Supreme Court of the United States held that the activities of the salesmen of the nonresident corporation within the State of Washington were such as to render the employer corporation amenable to the jurisdiction of the courts of that state and that in subjecting the nonresident corporation to the jurisdiction of the state court such corporation had not been denied due process. The decision in this case also destroyed the limitation imposed by the earlier doctrine that the jurisdiction of the state court ended at the state line because physical control of the defendant by the court terminated at that point. In the opinion the court said: ''Historically the jurisdiction of courts to render judgment *in personam* is grounded on their de facto power over the defendant's person. Hence his presence within the territorial jurisdiction of a court was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff*, 95 U. S. 714, 733. But now that the *capias ad respondendem* has given way to personal service of summons or other form of notice, due process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' *Milliken v. Meyer*, 311 U. S. 457, 463. See Holmes, J., in *McDonald v. Mabee*, 243 U. S. 90, 91. Compare *Hoopeston Canning Co. v. Cullen*,

318 U. S. 313, 316, 319. See *Blackmer v. United States,* 284 U. S. 421; *Hess v. Pawloski,* 274 U. S. 352; *Young v. Masci,* 289 U. S. 253."

The opinion also contains these paragraphs:

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is not merely, as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. *St. Louis S. W. R. Co. v. Alexander,* supra, 228; *International Harvester Co. v. Kentucky,* supra, 587. Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly adminstration of the laws which it was the purpose of the due process clause to insure. That clause does not contemplate that a state may make binding a judgment *in personam* against an individual or corporate defendant with which the state has no contacts, ties, or relations. Cf. *Pennoyer v. Neff,* supra; *Minnesota Commercial Assn. v. Benn,* 261 U. S. 140.

"But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue. Compare *International Harvester Co. v. Kentucky,* supra, with *Green v. Chicago, B. & Q. R. Co.,* supra, and *People's Tobacco Co. v. American Tobacco Co.,* supra. Compare *Connecticut Mutual Co. v. Spratley,* supra, 619, 620 and *Commercial Mutual Co. v. Davis,* supra, with *Old Wayne Life Assn. v. McDonough,* supra. See 29 Columbia Law Review, 187-195."

In decisions rendered after the decision in the *International Shoe Company* case, the Supreme Court of the United States has recognized and upheld the jurisdiction of a state court over nonresidents who had made minimum contacts in the state and who are personally served with process outside the state to render a personal judgment against such nonresidents. See *McGee v. International Life Insurance Company,* 355 U. S. 220, 78 S. Ct. 199, 2 L. Ed. 2d 223; *Travelers Health Association v. Commonwealth of Virginia ex rel. State Corporation Commission,* 339 U. S. 643, 70 S. Ct. 927, 94 L. Ed. 1154. See also *Perkins v. Benguet Consolidated Mining Company,* 342 U. S. 437, 72 S. Ct. 413, 96 L. Ed. 485.

The Illinois statute was clearly intended to meet the jurisdictional requirements and to comply with the standards enunciated and proclaimed in *International Shoe Company v. State of Washington,* 326 U. S. 310, 66 S. Ct. 154, 90 L. Ed. 95, 161 A.L.R. 1057. In the light of the above cited cases the Illinois statute, in its application to the facts of this case, does not offend due process and its constitutionality is upheld by this Court.

An Illinois statute which, in part, provides that any person, whether or not a citizen or resident of that state who, in person or through an agent, within that state, transacts any business, commits a tortious act, uses, owns or possesses any real estate, or contracts to insure any person, property or risk, by reason of such acts submits to the jurisdiction of the courts of that state as to any cause of action arising from any such acts, and which also provides that service of process upon any person who is subject to the jurisdiction of the courts of that state may be made by personally serving the summons upon the defendant outside the state with the same force and effect as though such summons had been served within the state, is not violative of the due process clause of the Constitution of the United States and the Constitution of this State and is constitutional and valid, in its application

to the facts of this case, which show that the defendant, a West Virginia corporation, by its representative, in Fulton County, Illinois, entered into an agreement with the plaintiff, an Illinois corporation, to purchase from the plaintiff certain merchandise, owned by it and located in that state, and executed and delivered notes for the unpaid portion of the purchase price of such merchandise, which was either delivered to the defendant in Illinois or shipped to and received by it in Randolph County, West Virginia, and after default by the defendant in the payment of such purchase money, a representative of the defendant was personally served in Randolph County, West Virginia, with process in an action instituted by the plaintiff in Fulton County, Illinois, to recover the unpaid portion of such notes and a reasonable attorney fee.

As the Circuit Court of Fulton County under the Illinois statute had jurisdiction to enter a personal judgment against the defendant for $1,259.56 and taxable costs of $33.75, the judgment entered by that court is a valid judgment and as such is entitled to full faith and credit in the courts of this State. Under the full faith and credit clause, Section 1, Article IV, of the Constitution of the United States, the courts of this State may not refuse to enforce a valid judgment of a court of another state even though it involves some contravention of the public policy of this State. *Paull v. Cook,* 135 W. Va. 833, 65 S. E. 2d 750; *International Harvester Company of America v. Solazo,* 116 W. Va. 34, 178 S. E. 429. It follows that the action of the Circuit Court of Randolph County, in according the judgment of the Illinois court full faith and credit and in entering judgment upon it, was in all respects correct and proper.

There is no merit in the contention of the defendant that so much of the judgment of the Illinois court which represents an item of $165.00 attorney fee is void and unenforceable. Though there can be no recovery in the courts of this State for an item of attorney fee stipulated and embraced in a valid note for

the reason that recovery of such item is contrary to the public policy of this State, *Campen Brothers v. Stewart,* 106 W. Va. 247, 145 S. E. 381; *Raleigh County Bank v. Poteet,* 74 W. Va. 511, 82 S. E. 332, L.R.A. 1915B, 928, Ann. Cas. 1917D, 359; *First National Bank of Mannington v. Bank of Mannington,* 76 W. Va. 356, 85 S. E. 541, this ban or inhibition, though applicable to a mere contract, does not apply to a valid judgment of another state in which a stipulation in a note for the payment of an attorney fee is recognized as valid and such item is incorporated in a valid judgment of a state in which such stipulation is valid and enforceable. *International Harvester Company of America v. Solazo,* 116 W. Va. 34, 178 S. E. 429. In that case a special plea averred that the judgment impleaded was based on judgment notes and that the judgment rendered in another state included an attorney fee or commission of ten per centum of the face of the note, and that the inclusion of an attorney's commission as part of the face value of a note is contrary to the law of this State and can not be collected in this State. In dealing with that contention this Court said: "True, a provision of that kind in a note will not be enforced in this jurisdiction. *Campen v. Stewart,* 106 W. Va. 247, 145 S. E. 381. On the authority of that case, such inhibition or ban applies 'not only to promissory notes payable in this state, but to all notes for which this state affords the forum for collection.' However, at bar we are not dealing with a mere contract but with a judgment of another state. The situation is different. 'The public acts or laws, records and judicial proceedings of a state are not susceptible of control or limitation by other states to the extent to which contracts are. A contract made in one state, to be performed in another, whose public policy it contravenes, need not be enforced by its courts; but the law of another state or judgment of its courts stands upon a higher footing.' *Roller v. Murray,* 71 W. Va. 161, 167, 76 S. E. 172. Full faith and credit must be given to such judgment. U. S. Constitution, Art. IV, sec. 1; II Black on Judgments (2d Ed.), sec. 859; III Freeman

on Judgments (5th Ed.), sec. 1357; 15 Ruling Case Law, pp. 924, 927. The courts of this state cannot refuse full import to a judgment of a sister state on the ground that it involves an element not approved in this state, but sanctioned where the judgment was rendered.''

It is perhaps pertinent to observe that the plaintiff, under a provision in the notes executed by the defendant authorizing confession of judgment against it, could have obtained a valid judgment by confession against the defendant in Illinois where such provision is valid if it had elected to have obtained a judgment in that manner. See *Pine v. Wheeler,* 4 Ill. App. 2d 374, 124 N. E. 2d 25; *May v. Chas. O. Larson Company,* 304 Ill. App. 137, 26 N. E. 2d 139; *Farmers' Exchange Bank of Elvaston v. Sollars,* 353 Ill. 224, 187 N. E. 289, 89 A.L.R. 398; *Johnson v. National Bank of Mattoon,* 320 Ill. 389, 151 N. E. 231; *Blake v. State Bank of Freeport,* 178 Ill. 182, 52 N. E. 957; *Martin v. Judd,* 60 Ill. 78; *Turner v. Alton Banking and Trust Company,* 181 F. 2d 899, certiorari denied, 340 U. S. 833, 71 S. Ct. 66, 95 L. Ed. 611, rehearing denied, 340 U. S. 885, 71 S. Ct. 194, 95 L. Ed. 643; Smith-Hurd, Illinois Annotated Statutes, Chapter 110, Section 50(4). Though a provision in a note which authorizes confession of judgment by an attorney of record is not recognized or regarded as valid in this State because contrary to its public policy, *Perkins v. Hall,* 123 W. Va. 707, 17 S. E. 2d 795, *Farquhar & Company v. Dehaven,* 70 W. Va. 738, 75 S. E. 65, 40 L.R.A., N. S., 956, Ann. Cas. 1914A, 640, this Court would not refuse to give recognition to a judgment obtained on such note in another state in which a judgment obtained in that manner is a valid judgment under the laws of such state. *Perkins v. Hall,* 123 W. Va. 707, 17 S. E. 2d 795; *Coleman v. Waters,* 13 W. Va. 278. In point 1 of the syllabus in the *Coleman* case this Court held that ''A judgment entered and rendered as confessed, in pursuance of the law of the State of New Jersey, by virtue of and in pursuance of a warrant of attorney, being

valid in the State of New Jersey, by virtue of the laws thereof, is entitled to 'full faith and credit' in this State, within the meaning of section 1, of Article 4, of the Constitution of the United States.''

The judgment of the Circuit Court of Randolph County is affirmed.

*Affirmed.*