Eileen A. Stewart (Sandifer),

*v.*

Larry Eugene Stewart

(No. CC916)

Decided December 19, 1980.

Robert B. Black, for plaintiff.

M. E. Mowery, for defendant.

MILLER, JUSTICE:

In this certified case, we are asked to consider whether a decree by a Virginia court that permitted a second husband to adopt his wife's child over the objection of her former husband, the natural father, is entitled to full faith and credit in this State. The adoption occurred under a Virginia statute which permits the court to grant such an adoption if it finds the adoption to be in the best interest of the child.[1]

It is not denied that the natural father had notice of the proposed adoption and appeared in the Virginia court and

---

[1] The material portion of the Virginia statute, Va. Code 63.1-225, is:
"Consent shall be executed:

"(1) By the parents or surviving parent of a child born in wedlock; provided, however, if the parents are divorced and the residual parental rights and responsibilities as defined in § 16.1-228 S of one parent have been terminated by terms of the divorce, or other order of a court having jurisdiction, the petition may be granted without the consent of such parent; or

"(2) By the parents or surviving parent of a child born out of wedlock. The consent of the father of a child born to an unmarried woman shall not be required (i) if the identity of the father is not reasonably ascertainable, or (ii) if the identity of such father is ascertainable and his whereabouts are known, such father is given notice of the adoption proceeding by registered or certified mail to his last known address and such father fails to object to the adoption proceeding within twenty-one days of the mailing of such notice; or
* * * * * * * * *
"C. If after hearing evidence the court finds that the valid consent of any person or agency whose consent is hereinabove required is withheld contrary to the best interests of the child or is unobtainable, the court may grant the petition without such consent: . . ."

objected to the proceeding. No appeal was taken to the Supreme Court of Virginia and the record is unclear as to whether the natural father raised in the Virginia proceeding the constitutional issue that he brings to us.

What brought the matter into our courts was that the natural mother of the child, now known as Mrs. Sandifer, and her second husband, who adopted the child, moved back to Wood County. This was where she had originally obtained her divorce in April, 1976, from her former husband, Mr. Stewart. Upon her return, Mr. Stewart petitioned the Circuit Court of Wood County to modify his visitation rights that had been granted to him in the original divorce. Mrs. Sandifer in defense produced the Virginia adoption decree and moved for summary judgment based on the Full Faith and Credit Clause of the United States Constitution, Article IV, § 1.[2]

The trial court in denying summary judgment apparently accepted Mr. Stewart's position that a West Virginia court is not entitled to give full faith and credit to a decree of a Virginia court if the decree is predicated on a statute which is unconstitutional. It was the trial court's reasoning that the Virginia statute was constitutionally vague because it utilized the general standard "contrary to the best interests of the child" in cutting off the parental rights of a natural parent. [3]

---

[2] "Full Faith and Credit shall be given in each State to the public Acts, Records, and judicial proceedings of every other State."

[3] The argument as to the unconstitutionality of the Virginia statute arises from a statement in *Quilloin v. Walcott*, 434 U.S. 246, 255, 54 L.Ed.2d 511, 520, 98 S.Ct. 549, 555 (1978), where the Court stated:

"We have little doubt that the Due Process Clause would be offended '[i]f a State were to attempt to force the breakup of a natural family, over the objections of the parents and their children, without some showing of unfitness and for the sole reason that to do so was thought to be in the children's best interest.' Smith v Organization of Foster Families, 431 US 816, 862-863, 53 L Ed 2d 14, 97 S Ct 2094 (1977) (Stewart, J., concurring in judgment)."

The Supreme Court has not directly addressed this issue on an adoption statute similar to Virginia's. A similar issue is currently

It cannot be doubted that the United States Supreme Court is the final arbiter of the scope of the Full Faith and Credit Clause. *See Morris v. Jones,* 329 U.S. 545, 67 S.Ct. 451, 91 L.Ed. 488 (1947). The Supreme Court has identified two primary goals served by this clause. First, it acts as a nationally unifying force to keep the various states from ignoring judicial decrees rendered outside their border. *Sherrer v. Sherrer,* 334 U.S. 343, 355, 68 S.Ct. 1087, 1092-93, 92 L.Ed. 1429, 1438 (1948). Second, it is designed to bring about an end to litigation, thereby giving finality to court proceedings. *Riley v. New York Trust Co.,* 315 U.S. 343, 348-349, 62 S.Ct. 608, 612, 86 L.Ed. 885, 891 (1942).

The classic formulation of the Full Faith and Credit Clause was summarized in *Roche v. McDonald,* 275 U.S. 449, 451-452, 48 S.Ct. 142, 143, 72 L.Ed. 365, 368 (1928):

> "[T]he judgment of a State Court which had jurisdiction of the parties and the subject-matter in suit, shall be given in the courts of every other State the same credit, validity and effect which it has in the State where it was rendered and be equally conclusive upon the merits. .."

This principle has resulted in the general requirement that a state give at least the same *res judicata* effect to the judgment of a sister state which would be accorded in the State that rendered it. This requirement was summarized in *Riley v. New York Trust Co.,* 315 U.S. 343, 349, 62 S.Ct. 608, 612, 86 L.Ed. 885, 891 (1942):

> "By the Constitutional provision for full faith and credit, the local doctrines of res judicata, speaking generally, become a part of national jurisprudence, and therefore federal questions cognizable here."

---

before the Supreme Court in *Doe v. Delaware, prob. juris. noted* 445 U.S. 942, 63 L.Ed.2d 775, 100 S.Ct. 1336 (1980), *sub nom. In re Five Minor Children,* 407 A.2d 198 (Del. 1979). See *Petition of J.O.L.,* 409 A.2d 1073 (D.C. App. 1980), *vacated and remanded sub nom. Johnson v. J.O.L.,* No. 80-45, 49 U.S.L.W. 3371 (Nov. 17, 1980); *In re Adoption of krueger,* 104 Ariz. 26, 448 P.2d 82 (1969); *Petition of New England Home for Little Wanderers,* 367 Mass. 631, 328 N.E.2d 854 (1975).

There is a recognition that under the Full Faith and Credit Clause a state need not blindly accept the jurisdictional assertions contained in the judgment of the sister state. As indicated in *Durfee v. Duke*, 375 U.S. 106, 111, 84 S.Ct. 242, 245, 11 L.Ed.2d 186, 191 (1963), however, any inquiry is limited to ascertaining if the jurisdictional issues have been fairly litigated:

> "[W]hile it is established that a court in one State, when asked to give effect to the judgment of a court in another State, may constitutionally inquire into the foreign court's jurisdiction to render that judgment, the modern decisions of this Court have carefully delineated the permissible scope of such an inquiry. From these decisions there emerges the general rule that a judgment is entitled to full faith and credit–even as to questions of jurisdiction–when the second court's inquiry discloses that those questions have been fully and fairly litigated and finally decided in the court which rendered the original judgment."

We have rather consistently adhered to these same principles, stating them in the first three syllabus points of *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968):

> "1. Under Article IV, Section 1, of the Constitution of the United States, a valid judgment of a court of another state is entitled to full faith and credit in the courts of this State.

> "2. 'Full faith and credit must be given to the judgment or decree of a sister state if it is not successfully attacked on jurisdictional grounds.' Point 4, syllabus, Brady v. Brady, 151 W.Va. 900, 158 S.E.2d 359.

> "3. By virtue of the full faith and credit clause of the Constitution of the United States, a judgment of a court of another state has the same force and effect in this State as it has in the state in which it was pronounced."

*See also, Axelrod v. Premier Photo Service, Inc.*, 154 W. Va. 137, 173 S.E.2d 383 (1970); *Gavenda Brothers, Inc. v. Elkins Limestone Co.*, 145 W. Va. 732, 116 S.E.2d 910 (1960).

The husband here asserts that the alleged unconstitutional vagueness of the Virginia statute makes the Virginia judgment unconstitutional and therefore unenforceable under the Full Faith and Credit Clause. In support of his position, he cites *Hanson v. Denckla*, 357 U.S. 235, 255, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283, 1298 (1958), where the Court stated:

> "Delaware is under no obligation to give full faith and credit to a Florida judgment invalid in Florida because offensive to the Due Process Clause of the Fourteenth Amendment."

The Court in *Hanson* dealt with a Florida decree that attempted to hold a Delaware trust invalid, where both the trust res and the trustee were located in Delaware and the trustee did not appear in the Florida court. The Delaware courts had reached an opposite result holding the trust valid.

The Supreme Court concluded that Florida has neither *in rem* nor *in personam* jurisdiction over the trust or the trustees and consequently its decree was not entitled to full faith and credit in Delaware. The critical point from *Durfee* and *Hanson* is that the due process constitutional inquiry in a full faith and credit context centers on whether the court that rendered the judgment that is sought to be enforced in the sister state had jurisdiction over the parties and subject matter of the case. The inquiry does not extend, however, to a constitutional challenge to the cause of action itself.

In *Davis v. Davis*, 305 U.S. 32, 59 S.Ct. 3, 83 L.Ed. 26 (1939), and *Stoll v. Gottlieb*, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938), the court emphasized the finality of a judgment as to matters that were or could be litigated where the court had jurisdiction over the parties and the subject matter of the suit. In *Davis*, the wife sought to attack a Virginia decree in the District of Columbia on the basis that the parties had not been domiciled in Virginia

and therefore the Virginia court lacked jurisdiction. However, she had appeared in the Virginia court and contested the domicile jurisdictional issue, which was held to be sufficient to foreclose a later attack on the decree in the District of Columbia.

In Syllabus Point 7 of *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968), we decided the extent of the inquiry that could be made into the substantive merits of the case upon which the foreign judgment had been entered:[4]

> "An adjudication by a court having jurisdiction of the subject matter and the parties is final and conclusive, not only as to the matters actually determined, but as to every other matter which the parties might have litigated as an incident to such matters and which comes within the legitimate purview of the subject matter of the action; and it is not essential that the matter should have been formally put in issue in the former litigation, but it is sufficient that the status of the action was such that the parties might have had the subject matter disposed of on its merits."[5]

This particular issue of the right to attack a foreign judgment on the basis that it rests on an unconstitutional

---

[4] This Court in *State ex rel. Lynn v. Eddy*, 152 W. Va. 345, 163 S.E.2d 472 (1968), did recognize in its fourth syllabus point that a foreign judgment could be attacked on the basis of fraud in its procurement. No such claim of fraud is made in the present case. We have also recognized that the principles of full faith and credit do not foreclose a court from modifying a foreign decree on custody of a child where the forum state has jurisdiction over the child and there was a change of circumstances that requires such modification for the best interest of the child. *Adams v. Bowens*, 159 W. Va. 882, 230 S.E.2d 481 (1976). In the present case, however, the decree did not deal with custody, but with permanent adoption.

[5] A distinction is made under full faith and credit principles where substantive rights under another state's laws are sought to be enforced in the forum state. In such a case, the forum state may decline to enforce such rights if they are against the public policy of the forum state. *Nevada v. Hall*, 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979); *Gavenda Brothers, Inc. v. Elkins Limestone Co.*, 145 W. Va. 732, 743, 116 S.E.2d 910, 916 (1960).

statute or legal principle that does not involve the jurisdiction of the court has not been extensively treated by the courts. Those jurisdictions which have considered the issue hold that if the asserted unconstitionality of a statute on which a judgment is based goes to the merits of the action rather than the jurisdiction of the court rendering the judgment, such unconstitutionality cannot be asserted in another state as against the judgment under full faith and credit principles. In *Williams v. State of Washington*, 581 S.W.2d 494, 496 (Tex. App. 1979), the court expressed this point:

> "If unconstitutionality of a statute on which a judgment is based goes to the merits of the action rather than the jurisdiction of the court, it cannot be raised collaterally by attacking the judgment when it is sued on in another state. *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216, 220, *cert. denied*, 320 U.S. 210, 63 S. Ct. 1447, 87 L.Ed. 1848 (1942)."

A somewhat related problem occurred in *Morris Lapidus Associates v. Airportels, Inc.*, 240 Pa. Super. 80, 84, 361 A.2d 660, 663 (1976), where a New York judgment was sought to be enforced in Pennsylvania. The contention was made that the New York judgment was based on a New York arbitration award which had been rendered by biased arbitrators and that the award therefore violated due process concepts. The court in declining to permit this attack against full faith and credit principles stated:

> "[E]ven were we to conclude that the appearance of bias in arbitrators is a denial of due process, we could not, permit the collateral attack on the judgment attempted by appellees in this case. The cases cited by appellees for the proposition that a judgment obtained in violation of due process is not entitled to full faith and credit are not on point. In those cases, the due process denied had the result of depriving the litigant of an opportunity to appear and defend. *See Griffin v. Griffin*, 327 U.S. 220, 66 S.Ct. 556, 90 L.Ed. 635, *reh. denied*,

328 U.S. 876, 66 S.Ct. 975, 90 L.Ed. 1645 (1946); *Hansberry v. Lee,* 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); *Wetmore v. Karrick,* 205 U.S. 141, 27 S.Ct. 434, 51 L.Ed. 745 (1907)."

As we have earlier pointed out there is no contention that there was any lack of jurisdiction over the person of the husband since he did appear in the Virginia litigation. No contention is made that the Virginia court lacked jurisdiction over the subject matter since the child, natural mother and prospective adopting father were before the Virginia court. Nor is there any claim that fraud had been practiced on the Virginia court in order to invoke its jurisdiction. Under these circumstances, its judgment may not be attacked in this State under full faith and credit principles.

For the foregoing reasons, the lower court erred in affirmatively answering the certified question to the effect that the constitutionality of the Virginia statute underlying the Virginia judgment could be attacked under full faith and credit principles. This certified question which we answer in the negative requires full faith and credit to be given to the Virginia decree.

*Reversed.*