DAVID A. SHERMER *and* PEGGY SHERMER,

*v.*

JUDY CORNELIUS

(No. CC921)

Decided May 14, 1981.

---

*H. Truman Chafin* for plaintiffs.

*Jane Moran* for defendant.

NEELY, JUSTICE:

We granted this certified question to determine whether full faith and credit should be extended to a divorce/custody decree which was awarded by the courts of New York State, in favor of the petitioner. We have decided that West Virginia courts should extend full faith and credit to the New York order.

Petitioner, Judy Cornelius, is a resident of Penn Yan, Yates County, New York. She is the natural mother of Mark Allen Shermer, age 9 and Alicia Ann Shermer, age 7, both offspring of her marriage to David Shermer. On 20 May 1976, the Supreme Court of Yates County, New York, awarded Judy Cornelius a judgment of absolute divorce from David Shermer on the grounds of cruel and inhuman treatment and awarded her custody of Mark Allen and Alicia Ann subject to certain visitation rights. These visitation rights were exercised without incident by Mr. Shermer between 20 May and 15 August 1976. Mr. Shermer

stopped paying child support in December 1976 and petitioner received no contribution from him for the children's support and had no idea of his whereabouts from that time until July 1980. The children did visit their paternal grandparents during the period of Mr. Shermer's absence and on one such visit in mid-July 1980, the children were "snatched" by Mr. Shermer.

Judy Cornelius made three fruitless trips from Penn Yan, New York, to Mingo County, West Virginia, in search of her children after she discovered they had been snatched. She incurred great expense searching for her children and was forced to negotiate loans to cover her travel expenses. While unable to establish the whereabouts of Mr. Shermer or the children during her first and second visits, on her third visit, in November 1980, she found Mr. Shermer but was denied access to her children.

On 25 November 1980, David Shermer and his present wife, Peggy Shermer, filed a petition in Mingo County Circuit Court praying for custody of the Shermer children. A responsive motion to dismiss was filed by Judy Cornelius on 1 December 1980. A hearing on the motion to dismiss the Shermers' petition was held on the morning of 8 January 1981. After hearing Judy Cornelius's argument for giving the New York Court full faith and credit and after hearing the initial testimony of David Shermer, the court terminated the proceedings. The court determined that any decision on the Shermers' petition for custody or any decision on a subsequent habeas corpus petition filed by Judy Cornelius, must be preceded by a threshold decision concerning the extension of full faith and credit to the New York order.

At the request of the Mingo County Circuit Court, petitioner came before our Court on 13 January 1981 and again on 27 January 1981 seeking a directive order regarding the obligation of the lower court to extend full faith and credit to the judgment of divorce previously entered in the Supreme Court of Yates County, New York. Our Court issued a Writ of Mandamus ordering the Honorable John F. Bronson to enter a decision on petitioner's motion to dismiss. Judge Bronson convened

the Mingo County Circuit Court on 29 January 1981 and issued an order denying the motion to dismiss and further denying full faith and credit to the New York order. Petitioner thereupon moved to stay further proceedings pending certification of this question before our Court.

Petitioner contends that the Mingo County Circuit Court is without jurisdiction to proceed on the petition for custody filed by respondents, David and Peggy Shermer, and that the respondents cannot avoid the continuing jurisdiction of the New York Court which said in its order that it retained exclusive jurisdiction for modification of the alimony, custody and child support. The wording of the decree is as follows:

> "[It is] ORDERED, ADJUDGED AND DECREED, that the custody of the infant children of the marriage, Mark Allen Shermer and Alicia Ann Shermer, shall be and hereby are awarded to the plaintiff, Judy Shermer, and it is further

> "ORDERED, ADJUDGED AND DECREED, that the provisions of the Orders of the Family Court of the State of New York, dated April 14, 1976 and bearing docket number V-4-76 are adopted and confirmed by this Court with reference to visitation and support and medical care, provided, however, that the visitation shall be subject to the absolute discretion of the custodial parent, the mother, and it is further

> "ORDERED, ADJUDGED AND DECREED, that any application to modify, alter or enforce the provisions of this Decree as to custody, visitation, support, and medical care is and/are hereby directed to the exclusive jurisdiction of the Family Court of the State of New York. *Shermer v. Shermer*, N.Y. Sup.Ct., Yates Cty., Index No. 76-2021, (June 29, 1976)."

I

Our Court has been troubled by the inefficiency of the law concerning the modification of custody decrees for some time. In *Cantrell v. Cantrell*, 143 W.Va. 826, 106 S.E.2d 768 (1953), we felt compelled to enforce a rule that would "seem

'to reduce the law of custody to a rule of seize-and-run'." since our dissatisfaction was expressed twenty-eight years ago the law of child custody across the nation has changed dramatically and we are anxious to cooperate in our sister-states' efforts to achieve judicial comity and efficiency among courts.

We recently stated that once a court has established valid jurisdiction over the subject matter and parties to a divorce,

> [j]urisdiction continues throughout all subsequent proceedings which arise out of the original cause of action, including matters relating to alimony, child support and custody and that a party may not avoid the continuing jurisdiction of the trial court to modify orders concerning alimony, child support and custody by moving outside the geographical jurisdiction of the State. *State ex rel. Melvyn Ravitz v. Honorable Fred L. Fox, II Judge of the Circuit Court of Marion County West Virginia,* ___ W.Va. ___ 273 S.E.2d 370 (1980).

We have also extended this protection to the orders of courts of primary jurisdiction in our sister-states. In *Stewart v. Stewart,* 169 W.Va. 1, 289 S.E.2d 652 (1980), we upheld an adoption decree of a foreign court relying upon Syllabus Point 3 of *State ex rel. Lynn v. Eddy,* 152 W.Va. 345, 163 S.E.2d 472 (1968) which held that "by virtue of the full faith and credit clause of the *Constitution of the United States,* a judgment of the court of another state has the same force and effect in this state as it has in the state in which it was pronounced."

## II

The *Ravitz* and *Stewart* decisions are compatible with the terms of the Uniform Child Custody Jurisdiction Act (UCCJ) and applied in this instance will bring West Virginia courts into accord with the great majority of states. On 31 March 1981 our Legislature passed the Uniform Child Custody Jurisdiction Act and that Act will be in effect ninety days from the date of passage. *See* H.B. 785, *W.Va.*

*Code*, 48-10-1, *et. seq.* [1981].[1] In light of the Legislature's recent action and in light of the damage that may be done to other families and children in the intervening period up until the effective date of this legislation, we feel compelled to apply the principles of the legislation[2] in advance by common law. In judicially adopting the concepts of the UCCJ Act we are not alone. The Supreme Judicial Court of Massachusetts in *Murphy v. Murphy*, ___ Mass. ___, 404 N.E.2d 69 (1980) also applied the concepts of the UCCJ Act in determining that a custody decree in Arizona deserved

---

[1] At the time of this writing only four haven states remain which have not adopted the UCCJ Act. They are Massachusetts, Mississippi, South Carolina, and Texas. *See also* the District of Columbia, Puerto Rico, and the Virgin Islands. Congress has enacted federal legislation (Public Law 96-611) which was signed into law by President Carter on 28 December 1980 which was drafted to take effect on 1 July 1981.

[2] (a) The general purposes of this article are to:

(1) Avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;

(2) Promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;

(3) Assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state;

(4) Discourage continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child;

(5) Deter abductions and other unilateral removals of children undertaken to obtain custody awards;

(6) Avoid relitigation of custody decisions of other states in this state insofar as feasible;

(7) Facilitate the enforcement of custody decrees of other states;

(8) Promote and expand the exchange of information and other forms of mutual assistance between the courts of this state and those of other states concerning the same child; and

(9) Make uniform the law of those states which enact it.

(b) This article shall be construed to promote the general purposes stated in this section.

full faith and credit when a parent seized a child and filed for custody in Massachusetts.

While we may reach our conclusion relying upon only our prior case law, it is interesting to note that our decision would be the same under the applicable statutory provisions of *W.Va. Code*, 48-10-1, *et. seq.* The legislation does not require absolute reciprocity; it requires reciprocity in certain instances. The terms of the Act provide a system by which the jurisdictions which are members of the pact can determine the judicial location most conducive to a thorough evaluation of child custody issues. In the case before us, that jurisdiction would certainly not be West Virginia. Once the court makes a determination of custody, the decree is protected from modification by a court which is less informed regarding the child's needs. Application of the terms of the Act enables courts to minimize the manipulation of procedure and to deter the incidence of child-snatching.

In the case before us our courts would be clearly prohibited from exercising jurisdiction to modify a custody decree. Under future *Code* 48-10-14 [1981] out-of-state custody decrees which have been made substantially in accordance with this legislation must be followed. In addition, under *Code* 48-10-8 [1981] we must decline jurisdiction because of the conduct of the party, namely, the "child snatching" itself. Finally, we would be forced to decline jurisdiction under *Code* 48-10-7 [1981] which holds that inconvenient forums should not be used when a more convenient forum is available. In light of this guidance, and relying upon our decisions in *Ravitz, supra* and *Stewart, supra*, we find full faith and credit must be given to the New York custody decree.

For the foregoing reasons, the trial court erred in holding that the court could take jurisdiction of this custody question. We answer the certified question in the negative and require full faith and credit to be given to the New York decree. Accordingly, the judgment of the circuit court is reversed and the case is remanded with directions forthwith to enter an order immediately transferring custody to petitioner in accordance with the New York

decree and providing such police help and protection as is necessary to effect an orderly and immediate transfer of the children for transport back to the State of New York where they belong. Furthermore, no stay of this order is to be allowed pending any application for rehearing in this Court and the children are forthwith to be transferred to the custody of their mother or her attorney pending any further litigation on this subject whatsoever.

*Reversed and remanded with directions.*