Harry Brodsky (Plaintiff), Defendant in Error, v. Sam Frank et al., Defendants. Joe Singer et al. (Defendants), Plaintiffs in Error.

Gen. No. 33,265.

492

Opinion filed June 26, 1929.

DAVID K. TONE, BLANKSTEN, FREEMAN & FREEMAN and FLOYD E. BRITTON, for plaintiffs in error.

GALLAGHER, SHULMAN & ABRAMS, for defendant in error.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

The plaintiff, Harry Brodsky, brought his suit against Sam Frank, Joe Singer, Joseph Smith, Morris Siegel and Textile Headwear Company, a corporation, defendants, in an action of trespass on the case. The cause was tried by the court with a jury and a verdict was returned in favor of the plaintiff for the sum of $30,000. Plaintiff remitted the sum of $10,000 and judgment was entered for $20,000. The cause was submitted to the jury upon the first, second and third additional counts of the declaration.

The first additional count charges that on May 16, 1925, plaintiff was engaged in the business of manufacturing hats and caps and was the owner of certain fixtures, machinery, merchandise and good will and had a number of customers; charges that the defendants were at the same time officers and agents of the Textile Headwear Company, engaged in the manufacture of hats and caps; that on the day aforesaid the defendants and the Textile Headwear Company, by its officers and agents, falsely, fraudulently and maliciously conspired together for the purpose of inducing the plaintiff to turn over his good will, stock and fixtures; that in pursuance of said conspiracy the defendants falsely, fraudulently and maliciously represented to the plaintiff that if he would turn over said stock, fixtures, business, etc., together with his customers and

accounts and devote his time to the combined business of the plaintiff and the defendants, the Textile Headwear Company, up to and including December 31, 1925, plaintiff would receive, in the form of stock, one-fourth of all the company's assets of the Textile Headwear Company; charges that the plaintiff relied upon said representations and entered into the agreement and did turn over said good will, business, machinery, etc.; charges that the statements were false at the time made and were known to be false and made for the purpose of inducing.the plaintiff to turn over the stock, fixtures and machinery to the defendants; charges that the defendants wholly failed and refused to give the plaintiff stock representing a one-fourth interest in the assets of the Textile Headwear Company; charges further that they did on the day aforesaid appropriate and convert to their own use said business, fixtures, appliances, good will, goods, customers' accounts and business.

The second and third additional counts charged the defendants with having induced plaintiff to become associated with the Textile Headwear Company by false and fraudulent representations and upon promises to deliver stock in the future, setting forth practically the same set of facts as alleged in the first additional count. The following special interrogatory was submitted to the jury by the plaintiff:

"Do you find from the preponderance of the evidence that on or about to wit: June 8, 1925, the defendants, Joe Singer, Joseph Schmidt, Morris Siegel and Textile Headwear Company, a corporation, entered into a fraudulent conspiracy to cheat and defraud the plaintiff out of his business?" To this interrogatory the jury answered, "Yes."

The plaintiff testified that he first talked with the defendant Frank about becoming a partner in the business in June, 1925, and that Frank stated to him that he heard the Modern Cap Company was trying to com-

bine with the plaintiff and that if the plaintiff would come over to his place of business he would talk with the plaintiff about combining with his, Frank's, concern. Plaintiff testified that Frank further told him that they would take over his stock and machinery and asked the plaintiff to call him up on the next day. Plaintiff further testified that Frank told him that there were four partners in the business, drawing not less than $5,000 a year, and that the business could not be bought for $200,000, and that the plaintiff thereupon told Frank that he, the plaintiff, was drawing not less than $5,000 or $6,000 a year and giving his relatives a living, and that Frank said if he would come over he would be paid a one-fifth interest.

Plaintiff testified further that he did go to the Textile Headwear Company and met Frank, Singer and Smith and that Frank said at that conversation that they took stock about the end of December and suggested that the plaintiff draw the same as the rest of them for each and every week and about the first of December they would take stock and see how much his stock and machinery was and how much their stock and machinery was and appraise it, and if by the appraisal his stock and machinery was less in value than one-fourth of theirs, he, the plaintiff, was to pay the difference. Plaintiff testified further that he was to collect his own accounts receivable and pay up his bills, and that no value was to be placed on the good will or customers of either business.

Plaintiff testified further that he went to the Textile Headwear Company and started to work and that consolidated cards of the two businesses were prepared and the plaintiff took some of his machinery over and started drawing the same money as the rest. He also testified that he collected all of his own outstanding accounts and that no part of the receipts from these was turned over to the defendants.

From the other facts and circumstances in evidence, it appears that plaintiff remained with the defendants from early in June, 1925, until sometime in November of that year. In the latter month a quarrel developed between plaintiff and Singer, as a result of which Brodsky left. The defendants served notice on him after his leaving to take out such machines upon the premises of the company as belonged to him, and that if he did not do so they would have to store them at his expense.

The declaration is predicated upon the theory that the plaintiff was induced to enter into a business arrangement with the defendants by reason of the false and fraudulent representations made by the defendants and known by them to be false at the time.

An examination of the testimony fails to disclose any false representation as to any existing fact. The most that can be said in support of plaintiff's contention is that there may have been a misrepresentation as to a matter of intention which may have influenced the transaction, but such a misrepresentation as to something to be done in the future is not such fraud in law as warrants a recovery on the ground of misrepresentation and fraud. The fraud must be complete at the time of the transaction and not be an intention to commit a fraud in the future.

The Supreme Court of this State in the case of *Murphy v. Murphy*, 189 Ill. 360, in its opinion, citing with approval the case of *Gage v. Lewis* [68 Ill. 604], says:

"In *Gage v. Lewis*, supra, it was said 'that to warrant an action for a deceitful representation it must assert a fact or facts as existing in the present tense. A promise to perform an act, though accompanied at the time with an intention not to perform, is not such a representation as can be made the ground of an action at law. The party should sue upon the promise, and if this be void he has no remedy.' (*Gallagher v.*

*Brunel,* 6 Cow. 346.) Even if at the time when such representations, amounting to a mere promise to do an act in the future, are made, it is not intended to comply with them, it is but an unexecuted intention, which has never been held of itself to constitute fraud. (*Gage v. Lewis, supra.*)"

Again in the case of *Luttrell v. Wyatt,* 305 Ill. 274, it was said:

"Relying on language used by this court in *Murphy v. Murphy,* 189 Ill. 360, *Miller v. Sutliff,* 241 id. 521, and *Grubb v. Milan,* 249 id. 456, plaintiffs in error argue that, granting that Wyatt promised to pay Luttrell the money due on the notes if Luttrell would execute the release, the promise does not constitute a fraud. It is true that in order to constitute a fraud in law the representation must be an affirmance of fact and not a mere promise or expression of opinion or intention. A promise to perform an act, though accompanied at the time with an intention not to perform it, is not such a representation as can be made the ground of an action for deceit."

Counsel for defendant in error relies upon the case of *People v. Healy,* 128 Ill. 9, but an examination of that case fails to show that it supports counsel's position. It holds in effect that one who is induced to enter into a transaction by reason of false representations by another who does not intend to carry out the agreement, has a right of rescission by reason of the fraud. This is very different from an action to recover for fraud and deceit. Where a party is induced to enter into a transaction by fraud he has a right to rescind. But, before bringing an action, he is required by law to tender back such benefits he may have received from the other party before bringing his action.

We are not impressed with the effort of plaintiff to sustain the judgment by reason of an allegation in the first additional count to the effect that the defendants

appropriated and confiscated to their own use said business, fixtures, appliances, good will, customers' accounts, etc., on the theory that it substantially charges a conversion. A reading of the count shows clearly that it is a count to recover for false and fraudulent representations and, moreover, the evidence clearly shows that the customers' accounts were collected by the plaintiff; that only part of the appliances were turned over, and in addition the plaintiff was asked to remove the balance of his appliances and machinery from the premises of the defendants.

It is urged as error that the right of action, if any, did not exist in the plaintiff but in the Easter Hat & Cap Company, a corporation which was the legal owner of the accounts, fixtures and appliances at the time the arrangement was entered into by and between the plaintiff and the defendants and that therefore the plaintiff was not a proper party to the proceeding. Certain objections are also made as to the admissibility of evidence on behalf of the plaintiff, but we have not considered these because of the fact that we are of the opinion that the failure of the plaintiff to prove fraudulent misrepresentations on the part of the defendants is controlling.

For the reasons stated in this opinion the judgment of the superior court is reversed and judgment is entered here for the defendants.

*Reversed and judgment here for defendants.*

RYNER and HOLDOM, JJ., concur.