George S. May, Trading as George S. May Company, Appellee, v. Chas. O. Larson Company, Appellant.

Gen. No. 40,652.

138

Heard in the second division of this court for the first district at the April term, 1939. Opinion filed February 23, 1940.

DANA R. SIMPSON, of Chicago, and EDWARD F. MEE, of Sterling, for appellant.

McFARLAND, MORGAN & STEARNS, of Chicago, for appellee.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

On July 5, 1938, plaintiff, George S. May, doing business as George S. May Company, caused a judgment by confession for $2,629.04 to be entered against defendant, Chas. O. Larson Co., on 10 promissory notes theretofore executed by said defendant. On August 4, 1938, defendant filed a motion to vacate the judgment by confession, supported by its sworn, petition, in which, after asserting its due diligence in presenting said motion and that it had a meritorious defense it prayed for leave to file a counterclaim. Plaintiff filed a counter-affidavit, which challenged the sufficiency of defendant's petition and defendant then filed an additional affidavit. After a hearing on said petition and affidavits an order was entered November 29, 1938, denying defendant's motion to vacate the judgment by confession. Thereafter, on December 8, 1938, defendant again moved to vacate the judgment by confession on the ground that the court was without jurisdiction to enter same in that the judgment had been confessed in the wrong venue or county, and on the same day an order was entered denying this motion of defendant to vacate. Defendant appeals from the orders of November 29, 1938, and December 8, 1938, denying its motions to vacate.

The verified petition filed in support of defendant's first motion to vacate the judgment by confession, after averring facts sufficient to show that it was diligent in presenting its motion, alleged that the notes signed by defendant, upon which the judgment by confession was entered, were given to plaintiff "for certain alleged efficiency expert services"; that "the consideration

upon which said notes were made and entered into has wholly failed''; that ''plaintiff advertises itself as an 'Efficiency Expert Organization,' using certain phrases such as 'Industrial Engineers,' 'Merchandising Experts,' 'Statistical Experts,' etc.''; that ''Prior to the execution of said notes the plaintiff company by its duly authorized agents represented to this defendant that if it were permitted to conduct a thorough study of this defendant's business including methods of factory production, methods of handling the payment of employes and methods of selling this defendant's product, that the plaintiff would show this defendant how to develop better co-ordination in manufacturing procedure, how to stimulate production and lower manufacturing costs by balancing and reviving labor rates, how to increase the sale of defendant's merchandise and produce more of that merchandise at less manufacturing cost, how to make more money by discarding certain items of manufacture and making more of certain other items, how to save money and make money on handling, storage and transfer of materials''; that plaintiff ''positively promised and represented to this defendant that they would show'' an annual saving of $4,500 by economies of operation; that ''plaintiff further represented and promised to this defendant that they would show defendant how to make $3,000 additional profit out of its business through a properly set up sales plan, thereby increasing the annual net earnings of defendant's business by $7,500''; that defendant relied upon the representations and promises of plaintiff and allowed plaintiff's employees to inspect the books and factory of defendant; that considerable time was spent by plaintiff in going over said books and observing the operation of the factory; that defendant paid plaintiff the sum of $1,156.67 in five cash payments covering the period from August 14 to September 17, 1937; that ''each time that plaintiff requested money from this defendant or requested this

defendant to execute one of the notes at issue in the case the said plaintiff made extravagant representations to this defendant that they were formulating new methods of manufacture, new methods of keeping the records, new methods of paying the employees and new methods of making sales, which would improve defendant's business and raise its annual profit'' by more than $7,500; that ''each time that a note was executed the plaintiff, by its representative, would tell this defendant that the work must continue and that they could not make final recommendations until they had finished all of their work''; that ''by means of these constant promises and repeated assertions that when the job was completed fabulous profits would be shown, the plaintiff was able to obtain these notes from this defendant''; that ''this defendant has carefully analyzed the recommendations and reports made by plaintiff''; that ''there is not one single new idea or constructive, worth while recommendation in any of said reports''; and that no consideration whatever was given to defendant for said notes or for the $1,156.67 cash paid to plaintiff.

Plaintiff challenged the sufficiency of defendant's petition to vacate by written objections and a counter-affidavit. His written objections asserted that the ''petition of defendant is insufficient in law to authorize the court to set aside or vacate said judgment''; that ''said petition contains no allegation that the notes upon which judgment was confessed were given before the services were performed by plaintiff, and as pleadings are construed against the pleader it must be assumed that each respective series of notes given by defendant were given after the services were performed and an account stated''; that ''there can be no failure of consideration for past services rendered''; that ''it is not alleged in said petition what the contract was between the parties, or whether in writing and partly oral, or whether defendant had the right

to terminate the services of plaintiff at any time it chose to do so''; and that ''such petition does not allege facts but only conclusions, such as 'certain alleged efficiency expert service,' 'various extravagant representations,' 'fabulous profits would be shown,' and various other conclusions.''

Plaintiff's counter-affidavit alleged substantially that defendant authorized plaintiff in writing to make a preliminary survey and analysis of its business and factory operation to ascertain whether the conditions existing therein would warrant an intensive study and recommendations for improvements; that for this preliminary analysis plaintiff was to receive $300, which amount was to be thereafter deducted at the rate of $100 a week from plaintiff's weekly service charge if defendant employed plaintiff to make a further study; that the preliminary analysis was made and a report rendered; that such report included a proposal from plaintiff to defendant upon which further employment would be based; that said proposal was in part as follows:

''Each Saturday morning, our engineer will present to you an invoice covering the charge for our services during the week of which that Saturday is the last day. Thereupon, you will give our engineer a check for the amount of this invoice.

''It is understood that you are to have the privilege of cancelling the service at any time by calling a traveling engineer to the plant and giving him a check for all monies due at that time. It is further understood that we work on a $10 per hour basis regardless of the results secured.''

The counter-affidavit then alleged that as to the recommendations for improvements and the methods of putting them into operation the aforesaid proposal provided:

''We shall put our recommendations and suggestions in writing so that there will be a complete record of

the installation at all times. We shall not put any recommended changes into effect without previously having received your approval.''

Said affidavit further alleged that on August 7, 1937, defendant paid plaintiff $300 for the preliminary report and employed him to proceed with the work, agreeing to pay him at the rate of $10 an hour for the time he devoted to the work, the payments to be made at the end of each week, one-third in cash and two-thirds by notes; that, thereafter, at the end of each week, a statement was rendered by plaintiff to defendant showing the number of hours devoted to the employment at $10 an hour and the total amount due for that week; that each of said statements was accepted and approved and a check given for one-third of the amount shown thereon and the notes upon which judgment was confessed were given for the other two-thirds of the amount shown on said statements; that as the work progressed plaintiff made written reports to defendant; and that, when defendant paid plaintiff's weekly account in cash and notes, the approval and acceptance by the defendant were indorsed on said reports by its president, Chas. O. Larson. These reports were attached to the counter-affidavit as exhibits and made a part thereof.

Defendant's additional affidavit filed in support of its petition to vacate the judgment did not deny the material allegations of plaintiff's counter-affidavit but merely repeated in elaborate detail the allegations of its petition to vacate and gave a rather detailed account of the manner in which plaintiff's representatives went about the performance of their work in defendant's factory.

It is contended that ''a defense on the merits was shown by defendant's affidavit'' since ''the notes were obtained upon representations and promises that plaintiff's work would show defendant an annual increase in the net income of $7,500'' and that ''when plaintiff's

work was completed nothing was shown to improve or increase the monthly income and there was, therefore, a total failure of consideration.'' Since the allegations of material facts contained in plaintiff's counter-affidavit, heretofore set forth, were not denied in defendant's additional affidavit, their truth was necessarily admitted. Thus the situation as revealed to the trial court by the pleadings was that defendant employed plaintiff for the purpose of having the latter's engineers investigate the operation and management of defendant's factory and make recommendations for the improvement thereof; that for the service thus performed defendant was to pay plaintiff at the rate of $10 an hour at the end of each week, with the right to terminate the employment at any time; that there was no guaranty of results to be obtained; that defendant received periodic reports from plaintiff which it accepted and approved; that if the recommendations for changes in the operation of its plant were approved by defendant they would be put into effect, otherwise not; that at the end of each week defendant was presented with a written statement showing the number of hours devoted by plaintiff to its employment during that week, which statement was accepted and approved by defendant and one-third of the amount thereof paid by check and two-thirds by notes; and that defendant did not at any time terminate the employment but requested plaintiff to continue same until the last two notes were given.

Reduced to its final analysis the purported defense set forth in defendant's verified petition to vacate and its additional affidavit filed in support thereof was that it did not receive the benefits that its president believed it would receive from the employment of plaintiff. The trial court properly denied defendant's first motion to vacate the judgment by confession since no meritorious defense was shown and, therefore, no triable issue was raised by the pleadings.

Ordinarily a court of law will grant leave to a debtor to appear and defend against a judgment by confession entered against him if he has a valid defense. However, such relief will not be granted, even though the power of attorney was insufficient to give the court jurisdiction of the defendant, if it appears that the debtor owes the amount of the judgment and that he has neither a legal nor an equitable defense to the debt for which the judgment was entered. (*Alton Banking & Trust Co. v. Gray,* 259 Ill. App. 20; *Farwell v. Huston,* 151 Ill. 239.)

In so far as defendant relies upon false and fraudulent representations made to it by plaintiff as a defense to the latter's claim on the notes the rule is that for such representations to constitute a defense they must be as to an existing or past fact and not the mere promise to do some act in the future. Defendant's chief claim in this regard is that plaintiff represented that as a result of his "efficiency" analysis and recommendations, defendant's net income from its business would be increased $7,500 a year. Discussing a similar question in *Brodsky v. Frank,* 253 Ill. App. 491, which was affirmed in 342 Ill. 110, the court said at p. 495:

"The declaration is predicated upon the theory that the plaintiff was induced to enter into a business arrangement with the defendants by reason of the false and fraudulent representations made by the defendants and known by them to be false at the time.

"An examination of the testimony fails to disclose any false representation as to any existing fact. The most that can be said in support of plaintiff's contention is that there may have been a misrepresentation as to a matter of intention which may have influenced the transaction, but such a misrepresentation as to something to be done in the future is not such fraud in law as warrants a recovery on the ground of misrepresentation and fraud. The fraud must be com-

plete at the time of the transaction and not be an intention to commit a fraud in the future.''

Neither the petition to vacate nor the additional affidavit filed in support thereof showed a failure of consideration for the notes upon which the judgment was confessed. Even though we eliminate from consideration the allegations of plaintiff's counter-affidavit as to the written contract pursuant to which the notes were given, there is nothing in defendant's petition to vacate or in its additional affidavit to indicate that there was a failure of consideration for the notes. Instead of showing a failure of consideration in whole or in part for the notes, said petition to vacate and additional affidavit show that the notes were given for the alleged representations and promises of plaintiff. Under such circumstances the representations and promises would constitute the consideration. Passing upon a somewhat similar situation in *Gage v. Lewis,* 68 Ill. 604, the court said at pp. 616, 617 : ''These representations and promises, then, were the consideration, and the misfortune with the defendant is, not that he did not have them, or that anything has since transpired whereby he is not permitted to resort to them, but merely that he has not received the benefit from them which he was authorized to expect. . . .

''This case is plainly distinguishable from the class of cases where, in the sale and delivery of personal property, or the purchase of real estate, the title fails, it is held, that such failure may be interposed as a defense to a suit brought for the recovery of the purchase money. In those cases the consideration is the title to the property, while here it is the representation and promise of the party to do an action in the future.''

Failure of consideration, either total or partial, cannot be pleaded as a defense in a suit upon notes given in payment for professional services after such services have been actually performed. The notes upon

which the judgment was confessed were executed on various dates within a period of just a little more than a month and were delivered on the dates indicated thereon for services rendered prior to the dates on which the respective notes were executed and delivered. If the notes were understandingly given by defendant for services it had received, then, whether such services were worth much or little, there was no failure of consideration. (*Magers v. Dunlap*, 39 Ill. App. 618.) As heretofore stated, plaintiff's counter-affidavit alleged material facts which were not denied and which showed that the notes were given pursuant to a written contract which specified the terms of payment, that they were given after the services were performed by plaintiff and that an account was stated between the parties when each set of notes was executed and delivered by defendant to plaintiff. In our opinion the trial court did not err in denying defendant's original motion to vacate the judgment by confession since no meritorious defense was presented.

Defendant next contends (1) that "this judgment is null and void under the statute because the notes were not executed in Cook county and the defendant is not a resident of Cook county," and (2) that "the parties cannot make a valid judgment out of one that is void when entered." Defendant's second motion to vacate the judgment by confession was supported by an affidavit, which asserted "that the promissory notes contained the confession clauses upon which the judgment was entered in this case were not executed in Cook county and the defendant does not reside in Cook county. The notes were executed in the County of Whiteside and the principal and only office of the defendant corporation is in the City of Sterling in the said County. Said Defendant resides in the County of Whiteside."

Defendant insists that since the notes were executed in Whiteside county and its residence was in said

county, the superior court of Cook county lacked jurisdiction of both the subject matter and the person when it entered the judgment by confession, in view of subsec. 5, sec. 174, ch. 110, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 104.050], which provides as follows:

"Any person for a debt bona fide due may confess judgment by himself or attorney duly authorized either in term time or vacation, without process. Judgments entered in vacation shall have like force and effect, and from the date thereof, become liens in like manner and extent as judgments entered in term; provided, however, that such application to confess judgment, whether made in term time or vacation, shall be made in the county in which the note or obligation was executed or in the county where one or more of the defendants reside. A judgment entered by any court in any county other than those herein specified shall have no force or validity, anything in the power to confess to the contrary notwithstanding."

The difficulty with defendant's position in this regard is that this statute does not limit the jurisdiction of courts of general jurisdiction over the subject matter of judgments by confession, but merely provides the method by which the court may properly obtain jurisdiction over the person and specifies the venue in which a defendant may be sued. That portion of the statute which provides that "any person for a debt bona fide due may confess judgment by himself or attorney duly authorized, either in term time or vacation, without process" is merely declaratory of the right to enter judgments by confession recognized at common law. Since the constitution confers on the superior court of Cook county original jurisdiction of all actions at law and in equity, the legislature is precluded from limiting or restricting the jurisdiction of said court over the subject matter of a cause of action recognized at common law. A judgment by confession being a common law proceeding rather than a special statutory

proceeding, the failure in the instant case to comply with the provisions of the foregoing statute in the entry of the judgment did not deprive the court of jurisdiction of the subject matter. What this statute did contemplate regulating was the mode of procedure to be followed in entering a judgment by confession. The provision in the foregoing statute "that such application to confess judgment, whether made in term time or vacation, shall be made in the county in which the note or obligation was executed or in the county where one or more of the defendants reside" is unquestionably a limitation upon courts of general jurisdiction as to the county in which judgment may be confessed. Unless the question of such limitation is raised at the earliest opportunity, it will be considered as waived. There is no question that if defendant had urged specially in its first motion to vacate that the court lacked jurisdiction of the person of defendant on the ground that the latter's only place of business and residence was in Whiteside county and that the notes were executed there, the court was bound to vacate the judgment by confession and dismiss the suit. However, in our opinion the statutory limitation as to venue is waived unless the question of such limitation is raised at the earliest moment.

The provision of the statute before us is similar to sec. 6 of the former Practice Act, which reads:

"It shall not be lawful for any plaintiff to sue any defendant out of the county where the latter resides or may be found, except in local actions," etc. (Smith-Hurd Ill. Rev. Stat. 1933, ch. 110, sec. 6 [Cahill's Ill. St. 1933, ch. 110, ¶ 6].)

It is also similar to former section 28, par. 4 of the Municipal Court Act, which provided as follows as to cases of the first class:

"No such suit shall be commenced in the Municipal Court unless the defendant, if there be but one defendant, resides or is found within the City of Chicago,

or if the defendant be a corporation, unless its principal office is within said city''; etc. (Smith-Hurd Ill. Rev. Stat. 1931, ch. 37, sec. 383, par. 4 [Cahill's Ill. St. 1931, ch. 37, ¶ 416].)

In interpreting those statutory provisions in *Iles v. Heidenreich*, 271 Ill. 480, the court said at pp. 485, 486: ''Said section 28 of the Municipal Court act is similar to section 6 of the Practice act, (Hurd's Stat. 1913, p. 1859), which provides that it shall not be lawful for any plaintiff to sue any defendant out of the county where the latter resides or may be found, except in local actions, etc. Under this section it has been frequently and uniformly held that the statute confers a privilege upon one who is made defendant in a suit, of which he can avail himself if he chooses, but if he does not plead his privilege in apt time he will be regarded as having waived it and submitted to the jurisdiction of the court. (*Kenny v. Greer*, 13 Ill. 432; *Waterman v. Tuttle*, 18 id. 292; *Hardy v. Adams*, 48 id. 532; *Humphreys v. Phillips*, 57 id. 132; *Wallace v. Cox*, 71 id. 548; *Drake v. Drake*, 83 id. 526; *Mason and Tazewell Drainage District v. Griffin*, 134 id. 330.) According to these authorities it was the duty of plaintiff in error to plead to the jurisdiction of the court at the earliest moment. If he had raised the question by proper plea or motion and been overruled, the question could have been preserved and raised on appeal or writ of error. He could not enter a general appearance, plead to the merits of the action, go to trial, and then raise such question for the first time after verdict and judgment against him.''

So here instead of raising the question of jurisdiction of its person by proper motion in apt time defendant by its petition to vacate in the first instance entered a general appearance under which it not only submitted to the jurisdiction of the court to contest plaintiff's claim on the merits, but it prayed for leave to file a counterclaim.

For the reasons stated herein the orders of the superior court of November 29, 1938, and December 8, 1938, are affirmed.

*Orders affirmed.*

FRIEND and SCANLAN, JJ., concur.