# Illinois Official Reports

## Appellate Court

---

### *Saba Software, Inc. v. Deere & Co.*, 2014 IL App (1st) 132381

---

| | |
|---|---|
| Appellate Court Caption | SABA SOFTWARE, INC., Plaintiff-Appellee, v. DEERE AND COMPANY, Defendant-Appellant. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2381 |
| Filed<br>Rehearing denied | September 30, 2014<br>March 27, 2015 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from a dispute over an agreement under which plaintiff was to provide software subscription services to defendant, defendant's motion to transfer the action plaintiff filed in Cook County, Illinois, to Rock Island County was properly denied by the trial court, since the venue waiver provision in the parties' agreement provided the parties waived the Illinois venue statute and the doctrine of *forum non conveniens*, and the parties consented to venue in "any federal or state court of competent jurisdiction located in Illinois for the purposes of adjudicating any matter arising out of or relating to" the agreement; therefore, Cook County was a proper place for plaintiff to file its action. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-002088; the Hon. Joan E. Powell, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Patricia Brown Holmes, Neil Lloyd, and Rachel Remke, all of Schiff Hardin LLP, of Chicago, for appellant.

Leonard A. Gail and Bruce W. Doughty, both of Massey & Gail LLP, of Chicago, for appellee.

Panel

JUSTICE GORDON delivered the judgment of the court, with opinion.
Justices McBride and Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1      On February 26, 2012, plaintiff Saba Software, Inc. (Saba), a Delaware corporation, filed suit in the circuit court of Cook County against defendant Deere & Company (Deere), another Delaware corporation, for money damages claiming: (1) breach of contract; and (2) restitution based on unjust enrichment. On April 22, 2013, Deere filed a motion to transfer the case to Rock Island County based on the Illinois venue statute, section 2-104 of the Code of Civil Procedure (735 ILCS 5/2-104 (West 2012)) and the doctrine of *forum non conveniens* (Ill. S. Ct. R. 187 (eff. Jan. 4, 2013) (describing the process for *forum non conveniens* motions)). After a hearing, the trial court denied the motion.

¶ 2      On July 26, 2013, Deere filed an interlocutory appeal pursuant to Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011), which permits interlocutory appeals from certain court orders. Rule 306(a)(2) permits an appeal from an order allowing or denying a *forum non conveniens* motion, and Rule 306(a)(4) permits an appeal from an order granting or denying a motion for a transfer of venue based on the assertion that the defendant is not a resident of the county in which the action was commenced, and no other legitimate basis for venue in that county has been offered by the plaintiff. Ill. S. Ct. R. 306(a)(2), (a)(4) (eff. Feb. 16, 2011).

¶ 3      On August 28, 2013, the appellate court dismissed the appeal. *Saba Software, Inc. v. Deere & Co.*, No. 1-13-2381 (Aug. 28, 2013). Deere then filed a petition for leave to appeal, which the Illinois Supreme Court denied, but, pursuant to its supervisory authority, it ordered this court to vacate its prior dismissal order and to hear the appeal. *Saba Software, Inc. v. Deere & Co.*, No. 116651 (Ill. Nov. 27, 2013).

¶ 4      In this interlocutory appeal, Deere argues that the trial court erred in denying its motion to transfer the case to Rock Island County. Deere contests the denial on two grounds: (1) that the trial court erred in failing to apply the Illinois venue statute; and (2) that the trial court erred in failing to properly apply the doctrine of *forum non conveniens*.

¶ 5      For the reasons discussed below, we affirm.

¶ 6                       BACKGROUND

¶ 7      On February 26, 2013, Saba filed the present suit against Deere in the circuit court of Cook County. The action seeks money damages for: (1) breach of contract; and (2)

restitution for unjust enrichment. Both claims arose out of a dispute over a subscription agreement, which the parties entered into on February 23, 2011.

¶ 8    To establish venue, Saba alleges in its complaint:

"Venue is proper in this Court because the transaction out of which the cause of action arose occurred in part in Cook County, Deere is authorized to do business in Cook County, and the parties explicitly consented to venue in any state court in Illinois, of competent jurisdiction–like this Court–to adjudicate issues arising out of or relating to the Parties' governing agreement. *See* 735 ILCS [5/2-101, 2-102 (West 2010)]; Subscription Agreement (as defined *infra*), ¶ 10.7 [*sic*]."

¶ 9                                    I. The Parties

¶ 10    Saba describes the parties in its complaint as follows: Saba is a Delaware corporation with its principal place of business in Redwood Shores, California, and it provides software subscription services to its customers, including learning management systems.

¶ 11    Deere is a Delaware corporation with its principal place of business in Moline, Illinois, and it is engaged in the business of agriculture and turf equipment, construction and forestry equipment, and related financial services.

¶ 12    On February 23, 2011, the parties executed three documents: (1) the software subscription services agreement (the subscription agreement); (2) the statement of work; and (3) the product schedule. The subscription agreement is the governing written contract under which Saba agreed to supply Deere certain software services, including a learning management system. The statement of work provided that Deere would pay Saba $791,175 for these services under a fixed-fee arrangement.

¶ 13    The subscription agreement includes provision 10.8, entitled "Venue," which states:

"The parties consent to the exclusive jurisdiction of, and venue in, any federal or state court of competent jurisdiction located in Illinois for the purposes of adjudicating any matter arising out of or relating to this Agreement."

¶ 14    Saba's complaint states that the initial "go live" date for this project was in November 2011. The parties later reworked their plan to establish a new "go live" date of February 20, 2012. This dispute arose after the project was not completed by this date, and negotiations began to break down. Pursuant to section 9.1 of the subscription agreement, the parties met on August 2, 2012, at Deere's headquarters in Moline, Illinois, to discuss the dispute. When the meeting proved unsuccessful to resolve the dispute, the parties entered into mediation, pursuant to section 9.2 of the subscription agreement, which was held on November 5 and 6, 2012, in Chicago, Illinois. The mediation was not successful.

¶ 15                              II. Deere's Initial Lawsuit

¶ 16    On November 6, 2012, following mediation, Deere filed a federal complaint against Saba in the United States District Court for Central Illinois based on diversity of citizenship. Deere & Co. v. Saba Software, Inc., No. 4:12-cv-04105-SLD-JAG, 2012 WL 6763323 (C.D. Ill. 2012). To establish venue there, Deere alleged three bases in its amended complaint, including the venue clause of the subscription agreement: "Venue lies in the District pursuant to 28 U.S.C. Sections 1391 and 1404 in that *** the parties agreed in writing that Illinois is the appropriate venue for any litigation between the parties."

¶ 17    On February 26, 2013, Saba filed a motion to dismiss under Rule 12(b) of the Federal Rules of Civil Procedure for, among other claims, lack of subject matter jurisdiction, because both parties are Delaware corporations and therefore the parties were not subject to diversity. Fed. R. Civ. P. 12(b)(1). On May 15, 2013, Deere voluntarily dismissed the federal suit without prejudice pursuant to Rule 41 of the Federal Rules of Civil Procedure.

### III. Motion to Transfer

¶ 19    After dismissal of the federal action, Saba filed this suit on February 26, 2013, in the circuit court of Cook County.

¶ 20    On April 22, 2013, before filing an answer, Deere filed a motion to transfer venue. The motion argued that: (1) venue is improper in Cook County under the Illinois venue statute (735 ILCS 5/2-104 (West 2012)) and should be transferred to Rock Island County; or (2) in the alternative, if venue is proper in Cook County, the matter should be transferred under the doctrine of *forum non conveniens*, claiming that the witnesses and evidence are located in Rock Island County, and that Cook County has no connection to or interest in the suit. Ill. S. Ct. R. 187 (eff. Jan. 4, 2013) (permitting an intrastate transfer of an action based on the doctrine of *forum non conveniens*).

¶ 21    In support of its motion, Deere attached: (1) the affidavit of William Nunn, a supply manager for Deere, which was signed and dated April 8, 2013; and (2) statistical information concerning the circuit courts of Illinois.

### A. Affidavit of William Nunn

¶ 23    Nunn's affidavit stated that he is a supply manager at Deere's corporate headquarters located at One John Deere Place in Moline, Illinois, which is located in Rock Island County. "At relevant times" in 2010, 2011 and 2012, Nunn was involved in the transaction between Deere and Saba that gave rise to this action. He stated that this litigation arose out of Deere's decision to replace its learning management system with a system provided by a third-party vendor.

¶ 24    Nunn provided additional information about the location of Deere's operations. Deere's registered office is in Moline, as well as its data center, which housed the learning management system. Six additional Deere facilities are located in Moline, and one additional facility is located in East Moline, Illinois, which is also in Rock Island County. Nunn also stated that Deere's principal place of business has been located in Moline for "well over 150 years." He estimated that the company has 5,000 employees in Rock Island County. He explained that Moline and East Moline are two of the five "Quad Cities," which also include Rock Island, Illinois; Bettendorf, Iowa; and Davenport, Iowa. Deere also has a training facility in Davenport, and no offices in Cook County.

¶ 25    Nunn also described the contract negotiation process. In 2010, Deere sent out requests for information to 15 companies, including Saba, and then requests for proposals to 5 companies, including Saba, for the replacement of its learning management system. All requests were sent from Deere's headquarters in Moline. On September 27, 2010, Saba submitted its proposal to Deere in Moline and the proposal was studied and analyzed there. On February 23, 2011, Deere executed three documents also in Moline: (1) the subscription agreement; (2)

the statement of work; and (3) the product schedule. He stated that no negotiations relating to these documents took place in Cook County.

¶ 26    Nunn further stated that, after the documents were executed, Saba's representatives visited Deere's representatives in Moline on "numerous occasions" to discuss implementation, configuration, and support issues, product schedules, and the learning management system. Saba invoiced Deere for the travel expenses, and Deere paid for these expenses. Deere also prepared over 350 "Defect Documents" after the execution of the agreement, which recorded problems, issues and defects in Saba's work on the learning management system. Each document was generated by problem-tracking software installed and executed in Deere's data center in Moline. Saba was given access to these documents electronically through Deere's data center in Moline. Nunn stated that no negotiations relating to implementation, configuration, and support issues, project schedules, and Deere's requirements for the learning management system took place in Cook County.

¶ 27    Nunn also provided information on the location of activities addressed in the statement of work, including user acceptance testing and data migration. Although the testing was never completed, Deere performed preliminary work on the testing in Moline. The data migration project related to data stored at Deere's data center in Moline. Nunn stated that Deere was not aware of any design work, configuration work, or support work performed in Cook County.

¶ 28    Nunn stressed the complexity of this litigation. He stated that he could think of "at least" 23 of defendant Deere's representatives that would appear as witnesses at trial for this matter. Eighteen of these individuals work at Deere's facilities in Rock Island County. The other five individuals work at Deere's facility in Davenport, Iowa, which is less than two miles from the Rock Island County courthouse. All 23 individuals live in either Rock Island County, Davenport, Bettendorf, or LeClaire, Iowa. LeClaire is located 16 miles from the Rock Island County courthouse. Nunn stated that he was not aware of any witness who resided or worked in Cook County.

¶ 29    Nunn stated that none of the events leading up to the transaction at issue in this litigation, or any of the events at issue in this litigation, occurred in Cook County. Chicago, Illinois, and the Cook County courthouse are located approximately 170 miles from Moline.

¶ 30                                    B. Statistical Information

¶ 31    Also attached to Deere's motion were sections from the "Annual Report of the Illinois Courts, Statistical Summary–2011," which stated that it was compiled and published by the administrative office of the Illinois courts. The report shows the civil caseload statistics by county for the circuit courts of Illinois. At the end of 2011, Cook County had 23,837 cases pending where the plaintiff sought over $50,000 in damages, and had 498,763 total civil cases pending. In contrast, Rock Island County had 395 cases pending where the plaintiff sought over $50,000 in damages, and had 9,912 total civil cases pending at the end of 2011.

¶ 32    Deere also attached to its motion the section of the report listing time-lapse statistics (case filing to date of verdict) for law jury verdicts over $50,000 in damages for the circuit courts of Illinois. In 2011 there were 426 law jury verdicts over $50,000 in damages in Cook County, and the average time lapse between date of filing and date of verdict was 35.1 months. In contrast, there were four law jury verdicts over $50,000 in damages in Rock Island County in 2011 and the average time lapse was 13.8 months. However, as the parties

acknowledged during the hearing on the motion to transfer, the present case will have a bench trial, not a jury trial.

¶ 33                                    C. Saba's Response

¶ 34    Saba's response to the motion to transfer argued that the venue clause in the subscription agreement "forecloses any challenge to venue, whether based on statute or convenience." Saba referred to provision 10.8 of the subscription agreement, entitled "Venue," which states:

> "The parties consent to the exclusive jurisdiction of, and venue in, any federal or state court of competent jurisdiction located in Illinois for the purposes of adjudicating any matter arising out of or relating to this Agreement."

¶ 35    Saba did not provide an affidavit with its response, and it does not challenge in writing any of the factual assertions made in Deere's motion or in Nunn's affidavit, or any of the statistical data from the circuit courts of Illinois.

¶ 36                                  D. Hearing and Decision

¶ 37    On July 1, 2013, the circuit court held a hearing on the motion to transfer. At the hearing, Deere stated that it did not contest jurisdiction or venue in the state of Illinois, but argued that venue was not proper in Cook County. Deere argued that the venue selection clause in the agreement does not trump the Illinois venue statute because doing so would be contrary to both case law and common sense. It argued, in the alternative, that even if venue is proper in Cook County, the case should be transferred to Rock Island County based on the doctrine of *forum non conveniens.*

¶ 38    In response, Saba argued that there was a factual dispute as to whether there was a connection to Cook County. Although the transcript is slightly unclear,[1] Saba argued that an unidentified person who was connected to Saba was a resident of Orland Park and responded to Deere's request for proposal and negotiated the contract terms and was partially responsible for its implementation. Saba acknowledged that this information was not included in its brief to the trial court, but stated that this fact was not included because Deere had already agreed contractually that it was "perfectly acceptable and not inconvenient" to litigate in any court, state or federal, in Illinois. Saba argued that the language of the contract was written by Deere and was part of a form contract sent to companies that responded to Deere's request for proposals. Saba further noted that the contract was signed by five of Deere's senior executives. At that point, the trial court interrupted Saba's counsel to note: "Counsel, I don't think you really even need to argue this. This is really clear. They agree to any–I mean it says right here on venue."

¶ 39    Saba then addressed Deere's *forum non conveniens* argument, stating that "when Deere agreed that it would consent to venue to locate a case here, it essentially forfeits it [*sic*] right to argue the inconvenience of its witnesses." Saba further argued that, when Deere drafted the venue clause, it could have written the provision to state that venue was proper only in Rock Island County, but Deere did not, and "that's [*sic*] induced us to enter into it." Counsel for Saba attempted to present to the trial court a list of witnesses in Chicago, but the trial

---

[1]The transcript reads: "There was a–the Saba was a resident in Orland Park," which is located in Cook County, Illinois.

court refused to read the document because it was not timely presented in Saba's written response.

¶ 40      At the close of the hearing, the trial court denied Deere's motion to transfer, stating:

> "I'm just trying to think if this is enough. I've got plaintiff's choice, there's some deference for this. You have part of the transaction occurred in Cook. This is tenuous, Counsel. It's really tenuous, and I think you should have given me–well, we're on the record. I won't finish my sentence, but I would have appreciated some stronger factors in face of this motion, but I'm still going to keep it in Cook. I'm going to deny your motion."

¶ 41      On July 26, 2013, Deere petitioned this court for leave to file an interlocutory appeal pursuant to Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011). On August 28, 2013, this court denied Deere's petition for leave to appeal without stating its reasons. Deere then filed a petition for leave to appeal with the Illinois Supreme Court. On November 27, 2013, the Illinois Supreme Court denied this petition, but entered a supervisory order directing this court to vacate its August 28, 2013, order and grant defendant's petition for leave to appeal. *Saba Software, Inc. v. Deere & Co.*, No. 116651 (Ill. Nov. 27, 2013). On January 10, 2014, this court entered an order vacating its August 28, 2013, order and allowing Deere leave to appeal. This interlocutory appeal followed.

¶ 42                                   ANALYSIS

¶ 43      On this interlocutory appeal, Deere argues that the trial court erred in denying its motion to transfer the case to Rock Island County. Deere contests the denial on two grounds: (1) that the trial court erred in failing to apply the Illinois venue statute; and (2) that the trial court erred in failing to apply the doctrine of *forum non conveniens* to transfer the case to Rock Island County.

¶ 44      In response, Saba argues that the trial court correctly applied the venue clause in the subscription agreement to hold that venue in Cook County is proper, and further, that the contract's venue clause precludes any argument based on *forum non conveniens* grounds.

¶ 45                                  I. Jurisdiction

¶ 46      An appellate court may hear appeals only from final judgments, unless an exception specified by the supreme court rules applies. Ill. Const. 1970, art. VI, § 6; *Saddle Signs, Inc. v. Adrian*, 272 Ill. App. 3d 132, 135 (1995); *Bezan v. Chrysler Motors Corp.*, 263 Ill. App. 3d 858, 860 (1994). In the instant case, defendant's appeal was taken pursuant to Illinois Supreme Court Rule 306 (eff. Feb. 16, 2011). This rule permits appeals from orders of the circuit court granting new trials and orders granting or denying certain motions by permission of the appellate court. Ill. S. Ct. R. 306 (eff. Feb. 16, 2011). Subparagraphs (a)(2) and (a)(4) allow permissive appeals as follows:

> "(2) from an order of the circuit court allowing or denying a motion to dismiss on the grounds of *forum non conveniens*, or from an order of the circuit court allowing or denying a motion to transfer a case to another county within this State on such grounds;
>
>      \*\*\*

(4) from an order of the circuit court granting or denying a motion for a transfer of venue based on the assertion that the defendant is not a resident to the county in which the action was commenced, and no other legitimate basis for venue in that county has been offered by the plaintiff[.]" Ill. S. Ct. R. 306(a)(2), (a)(4) (eff. Feb. 16, 2011).

¶ 47    On July 26, 2013, defendant Deere petitioned the appellate court for leave to file an interlocutory appeal pursuant to Rule 306, quoted above, which we denied. *Saba Software, Inc. v. Deere & Co.*, No. 1-13-2381 (Aug. 28, 2013). However, the supreme court in a supervisory order directed us to vacate that order and hear this appeal, which we now do.

¶ 48                                   II. Proper Venue

¶ 49                                   A. Standard of Review

¶ 50    The issue of proper venue raises separate questions of fact and law. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 154 (2005). "We will not disturb a trial court's findings of fact unless those findings are against the manifest weight of the evidence." *Corral*, 217 Ill. 2d at 154. "A decision is against the manifest weight of the evidence only when an opposite conclusion is apparent or when the findings appear to be unreasonable, arbitrary, or not based on the evidence." *Eychaner v. Gross*, 202 Ill. 2d 228, 252 (2002). "The court on review must not substitute its judgment for that of the trier of fact." *Kalata v. Anheuser-Busch Cos.*, 144 Ill. 2d 425, 434 (1991). After reviewing the trial court's factual findings, we review the legal effect of the trial court's conclusions *de novo. Eychaner*, 202 Ill. 2d at 252.

¶ 51    In the trial court, the defendant has the burden to prove that the plaintiff's selection of venue was improper. *Weaver v. Midwest Towing, Inc.*, 116 Ill. 2d 279, 285 (1987). "In doing so, the defendant must set out specific facts, not conclusions, and show a clear right to the relief asked for. (*Taylor v. Southern Ry. Co.* (1932), 350 Ill. 139, 143; [citation].)" *Weaver*, 116 Ill. 2d at 285. "Any doubts arising from the inadequacy of the record will be resolved against the defendant. *Foutch v. O'Bryant* (1984), 99 Ill. 2d 389, 391-92." *Weaver*, 116 Ill. 2d at 285.

¶ 52                                   B. Illinois Venue Statute

¶ 53    The Illinois venue statute reads in pertinent part:

> "Generally. Except as otherwise provided in this Act, every action must be commenced (1) in the county of residence of any defendant who is joined in good faith and with probable cause for the purpose of obtaining a judgment against him or her and not solely for the purpose of fixing venue in that county, or (2) in the county in which the transaction or some part thereof occurred out of which the cause of action arose." 735 ILCS 5/2-101 (West 2012).

¶ 54    The venue waiver clause in *Martin-Trigona v. Roderick*, 29 Ill. App. 3d 553 (1975) provided:

> " 'Lessee further consents and waives venue or other objections to lessor instituting any action under this lease in any circuit court of Illinois.' " *Martin-Trigona*, 29 Ill. App. 3d at 554.

Similarly, the venue clause in the present case provides:

"The parties consent to the exclusive jurisdiction of, and venue in, any federal or state court of competent jurisdiction located in Illinois for the purposes of adjudicating any matter arising out of relating to this Agreement."

Although the exact language differs, the effect of the clause is the same: that the plaintiff may choose any circuit court in Illinois, and defendant is barred from objecting. Indeed, Saba asks the court to read the clause this way, arguing in its brief that "[b]y agreeing to the venue set forth in the Venue Clause, the parties necessarily *** waived or forfeited *** objection."

¶ 55 Deere relies on a 1975 2 to 1 decision of this court that found that a waiver of venue provision contained in a lease prepared by the plaintiff was void as against public policy when he filed a complaint in the circuit court of Cook County to recover rent payments owed by the defendant. *Martin-Trigona*, 29 Ill. App. 3d 553. The property and the defendant were located in Champaign, Illinois. *Martin-Trigona*, 29 Ill. App. 3d at 554. However, the *Martin-Trigona* case is distinguishable from the case at bar because here, Deere placed the waiver clause in the contract and by doing so, freely and voluntarily waived any objection to venue. Courts are traditionally reluctant to relieve parties of their contractual agreements, especially when they drew up a provision and obtained the consent of the other party. Venue is fundamentally a matter for the convenience of the litigants and is not jurisdictional in nature. It can be waived under section 8(2) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, ¶ 8(2)) by failure to assert in a timely fashion. *May v. Charles O. Larson Co.*, 304 Ill. App. 137 (1940). Certainly, it can be waived by the parties. When a party places it in a contract and the other party agrees, fundamental fairness requires that the party who placed it in the contract cannot later complain that the clause is void as against public policy.

¶ 56 Justice Felix Frankfurter authored a United States Supreme Court case (*Neirbo Co. v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)) involving an interpretation of a federal venue statute:

"The Court stated on page 167 that '[t]he jurisdiction of federal courts–their power to adjudicate–is a grant of authority to them by Congress and thus beyond the scope of the litigants to confer. *But the locality of a lawsuit–the place where judicial authority may be exercised–though defined by legislation relates to the convenience of the litigants and as such is subject to their disposition.*' (Emphasis supplied.) The Court further stated that venue is a personal privilege conferred by statute and may be asserted or waived at the litigant's election, citing *Commercial Casualty Insurance Co. v. Consolidated Stone Co.* (1929), 278 U.S. 177, 179. Thus, the court concluded that venue, being a privilege, may be lost either by failure to assert it seasonally, by submission in a cause, or by submission through contract." *Martin-Trigona*, 29 Ill. App. 3d at 557-58 (Burman, J., dissenting) (quoting *Neirbo Co.*, 308 U.S. at 167-68).

¶ 57 However, when a venue waiver clause is placed in a form contract and affects the due process rights of others, the waiver clause can be void contrary to public policy.

¶ 58 In *Williams v. Illinois State Scholarly Comm'n*, 139 Ill. 2d 24 (1990), our supreme court in a 4 to 3 decision found that an Illinois statute providing for the commencement of actions on delinquent or defaulted student loans exclusively in Cook County violated student borrowers' due process rights, and that the forum selection clause in guaranteed student loan agreements was void as contrary to public policy. *Williams*, 139 Ill. 2d at 28-29. Our supreme court stated: "These contracts were standard form agreements, prepared entirely by ISSC [(the Illinois State Scholarship Commission)]. The GSL [(guaranteed student loans)]

agreements amounted to adhesion contracts, in that the class members were in a disparate bargaining position, and, if they wanted the loan, were forced to 'take it or leave it.' " *Williams*, 139 Ill. 2d at 72. *Williams* is distinguished from the case at bar because here, this is not a boilerplate agreement issue to people all over the state or the nation. Here, we have a waiver clause prepared by Deere, agreed to by Saba, and now Deere wants the clause they placed into the contract to be held void as against public policy.

¶ 59 In *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), the United States Supreme Court found that, where an American company with special expertise contracted with a foreign company through arm's-length negotiations by experienced and sophisticated businessmen, for the towing of a complex machine thousands of miles across seas and oceans, and a clause providing for the treatment of any disputes to be decided before the London Court of Justice was a part of their contract, the clause was *prima facie* valid and was to be honored by the parties and enforced by the courts. In order to escape the agreed clause in the contract, the objecting party must show that trial in the contractual forum will be so gravely deficient and inconvenient that he will, for all practical purposes, be deprived of his day in court. Absent that, there is no basis for concluding that it would be unfair, unjust, or unreasonable to hold that party to his bargain.

¶ 60 The majority rule recognized in Illinois and in most jurisdictions provides that parties should be free and unrestricted in making their own contracts. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 129 (2005). More specifically, "Illinois's public policy ' "strongly favors freedom to contract" ' [citation] and broadly allows parties to determine their contractual obligations. [Citation.]" *Hussein v. L.A. Fitness International, L.L.C.*, 2013 IL App (1st) 121426, ¶ 11. As a result, "we exercise 'sparingly' the power to declare a private contract void as against public policy." *American Access Casualty Co. v. Reyes*, 2012 IL App (2d) 120296, ¶ 10 (quoting *Progressive*, 215 Ill. 2d at 129). As a result, the parties waived venue in their contract, and Cook County is a proper place to bring the action.

¶ 61                                     III. *Forum Non Conveniens*
¶ 62 *Forum non conveniens* is an "equitable doctrine founded in considerations of fundamental fairness and the sensible and effective administration of justice." *Langenhorst v. Norfolk Southern Ry. Co.*, 219 Ill. 2d 430, 441 (2006); *Gridley v. State Farm Mutual Automobile Insurance Co.*, 217 Ill. 2d 158, 169 (2005). This doctrine permits a trial court to transfer a case when "trial in another forum 'would better serve the ends of justice.' " *Langenhorst*, 219 Ill. 2d at 441 (quoting *Vinson v. Allstate*, 144 Ill. 2d 306, 310 (1991)); *Gridley*, 217 Ill. 2d at 169.

¶ 63 Deere not only prepared and agreed to a waiver of the Illinois venue statute, it expressly waived the doctrine of *forum non conveniens* for the same reasons that we have previously related.

¶ 64                                     CONCLUSION
¶ 65 For the foregoing reasons, we affirm the trial court's order denying defendant Deere's motion to transfer to Rock Island County.

- 10 -

¶ 66        Affirmed.